# Richmond

N. A. A. C. P. Legal Defense and Educational Fund, Incorporated v. Committee on Offenses Against the Administration of Justice.

National Association for the Advancement of Colored People and Virginia State Conference of NAACP Branches v. Committee on Offenses Against the Administration of Justice.

December 2, 1963.

Record Nos. 5614, 5615.

Present, All the Justices.

The opinion states the case.

*James M. Nabrit, III (Lawrence Douglas Wilder; Jack Greenberg; Michael Meltsner; Frank H. Heffron,* on brief), for plaintiff in error, N.A.A.C.P. Legal Defense and Educational Fund, Inc.

*S. W. Tucker (Henry L. Marsh, III,* on brief), for plaintiffs in error, NAACP, Et Al.

*William H. King (Robert Y. Button, Attorney General,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

■ We are called upon to determine the question whether the Commonwealth of Virginia may, pursuant to Virginia Code, § 30-42, *et seq.,* Cum. Supp. 1962, Acts 1958, page 490, compel the National Association for the Advancement of Colored People, and its affiliates, the Virginia State Conference of NAACP Branches and NAACP Legal Defense and Educational Fund, Incorporated, to disclose to the Committee on Offenses Against the Administration of Justice, a legislative committee, the name and address of each resident of Virginia who has made donations to each of the above organizations.

On May 25, 1961, the Committee on Offenses against the Administration of Justice, hereinafter referred to as Committee, or appellee, caused to be issued a summons against each of the appellant organizations, directing each of them to file, on or before June 23, 1961, sworn answers to certain interrogatories. The interrogatories were in the following form, with the name of the organization to which it was addressed, and pertinent dates, appropriately inserted:

"Committee on Offenses Against the Administration of Justice, a legislative committee of the Commonwealth of Virginia, calls upon .................. (hereinafter referred to as.................. ) to answer under oath the following interrogatories:

"1. (a) State the name and address of each resident of Virginia and of each firm, corporation and enterprise situated or doing business

therein who or which, since December 31, 195—, has made a donation of $25.00 or more to the ...............; and

"(b) State the time and the amount of each such donation.

"2. (a) State the name and address of each recipient of sums paid by the .................. since December 31, 195— for legal services rendered it or them or any other in the Commonwealth of Virginia; and

"(b) State the time and the amount of each such payment, and the nature of the services for which each payment was made.

"The word 'donation' as used in interrogatory no. 1 shall be deemed to include, but shall not be limited to, each payment of $25.00 or more received by the ............. as a membership charge or fee, it being understood that the ............. in answering the interrogatory is not required to state the purpose of any donation.

"These interrogatories are propounded pursuant to § 30-42 (b) of the Code of Virginia, and answers thereto are required to aid the Committee in determining what donors, if any, have wrongfully recorded their donations as allowable deductions in their income tax returns filed with the Commonwealth of Virginia, and what recipients, if any, have wrongfully failed to show as income in such returns fees for legal services rendered in the Commonwealth of Virginia."

The pertinent provisions of Code, § 30-42, under which the Committee propounded its interrogatories, read as follows:

"(a) There is hereby created a joint committee of the General Assembly to be known as the Committee on Offenses Against the Administration of Justice, hereinafter sometimes referred to as joint committee. Such joint committee shall investigate and determine the extent and manner in which the laws of the Commonwealth relating to the administration of justice are being observed, administered and enforced and shall specifically direct its attention to the observance and to the methods and means of administration and enforcement of those laws, whether statutory or common law, relating to champerty, maintenance, barratry, running and capping and other offenses of any other nature relating to the promotion or support of litigation by persons who are not parties thereto.

"(b) The joint committee is further authorized to investigate and determine the extent and manner in which the laws of the Commonwealth relating to State income and other taxes are being observed by, and administered and enforced with respect to, persons, cor-

porations, organizations, associations and other individuals and groups who or which seek to promote or support litigation to which they are not parties contrary to the statutes and common law pertaining to champerty, maintenance, barratry, running and capping and other offenses of like nature."

On June 23, 1961, the National Association for the Advancement of Colored People (NAACP) and Virginia State Conference of NAACP Branches (Conference) filed a joint motion to quash the summonses served upon them on the ground that disclosure of the identity of the donors to their organizations would violate constitutional rights of freedom of expression and privacy of association, as well as their property rights, granted by the Virginia Bill of Rights (Constitution of Virginia, § 12) and by the First and Fourteenth Amendments to the Constitution of the United States. The NAACP and the Conference answered none of the interrogatories.

On the same day, Fund filed its motion to quash the summons served upon it, based on the same grounds assigned by its affiliates. It specifically objected to disclosure of the names of those who made donations to it. However, it filed an answer, and without conceding the validity of § 30-42, submitted a list of the amounts and dates of each donation and the residence of the Virginia donors, without disclosing the name of the donor; and a second list fully answering interrogatories "2 (a) and (b)," relating to the recipients of sums paid for services rendered to Fund.

By consent of counsel, the issues being substantially the same, the motions to quash were heard on August 23 and 24, 1961. During the hearing, the court, over the objection and exception of appellants, excluded certain evidence and exhibits tendered by appellants, tending to show the history and purpose of Code, § 30-42, and the fact that disclosure of the names requested would result in harassment, intimidation and injury to appellants and their contributors. After consideration of the evidence and the argument of counsel, the court, on June 22, 1962, denied each motion to quash, and directed each appellant to provide to the Committee complete answers to each interrogatory.

Appellants challenge the decision of the trial court in numerous assignments of error; but we reach only two questions: First, whether a compelled disclosure of the names of the donors violates constitutional rights to freedom of expression and privacy of association; and, secondly, whether the evidence presented is sufficient to show such

an overriding and compelling interest in the State of Virginia in the disclosure of donors' names as to justify a limitation upon the constitutional rights claimed by appellants.

Committee, created by Acts 1958, Chapter 373, pages 490 *et seq.*, succeeded two similar committees, one under the same name and the other sometimes referred to as Committee on Law Reform and Racial Relations [Acts 1956, Chapters 34 and 37], and was given full authority to inspect the records and proceedings of the two former committees. [Code, § 30-50, Cum. Supp. 1962]. The legislation was part of a pattern dealing with activities relating to racial controversies and civil rights.

The activities, purpose and aims of the NAACP, the Conference and the Fund have been stated time after time in a multitude of cases both in the State and Federal Courts. Their history, development and organization and the character of their activities have been recited at length in *N. A. A. C. P. v. Harrison*, (1960) 202 Va. 142, 116 S. E. 2d 55, and in *N. A. A. C. P., et al. v. Patty, et al.*, (1958) 159 F. Supp. 503, (E. D. Va.), judgment vacated and remanded to the District Court to afford State authorities an opportunity to obtain a construction of the statute involved by the courts of Virginia in *Harrison v. N. A. A. C. P.*, (1959) 360 U. S. 167, 3 L. ed. 2d 1152, 79 S. Ct. 1025.

Suffice it to say here that the announced purpose of the NAACP is, as its name suggests, to eliminate all forms of racial segregation. Affiliated with it are a great number of "branches," local auxiliary groups, operating throughout the Nation; a unit in each of the several States being organized into an unincorporated association, known as State Conference of NAACP Branches. Fund has a small membership and is operated for the purpose of gratuitously rendering legal aid to Negroes in need of such service, and in promoting educational facilities and opportunities for them. It is financed by voluntary contributions and staffed by a group of lawyers and research assistants, who act when called upon for aid in racial controversies, involving alleged discriminatory practices.

There is ample uncontroverted testimony in the record from officials, agents and members of the appellant organizations, to show that many persons fear a disclosure of their names as associates or supporters of appellants' activities will bring upon them harassment, intimidation, enmity and social and economic reprisal. This is evidenced by anonymous contributions made to avoid the threatened

hostility of other persons in their community. Some donations have been made only upon assurance that the names of the donors would not be disclosed. One would have to be deeply insensible to the affairs of present day life, or a modern Rip Van Winkle, to fail to observe the opposition in Virginia and in many parts of the Nation to the activities of the NAACP and its affiliates in the field of racial relations. So tense and widespread has been the resentment that judicial cognizance has been taken of the situation.

In *N. A. A. C. P.* v. *Button,* (1963) 371 U. S. 415, 435, 83 S. Ct. 328, 339, 9 L. ed. 2d 405, 419, the court said, in reversing *N. A. A. C. P.* v. *Harrison, supra,* citing many cases, that:

"We cannot close our eyes to the fact that the militant Negro civil rights movement has engendered the intense resentment and opposition of the politically dominant white community of Virginia; litigation assisted by the NAACP has been bitterly fought."

There can be no reasonable doubt that a disclosure of the names of those who support the activities of the appellants could have no result other than to injuriously affect the effort of appellants to obtain financial support in promoting their aims and purposes.

The law has always recognized the right of one to assist in commencing or prosecuting a legitimate undertaking, and financial support therefor is essential. A denial of such support would be a denial of the right.

The Supreme Court has repeatedly held that the activities of appellants, as disclosed in this record, are wholly legitimate and "are modes of expression which are within the ambit of the constitutional protections afforded by the First and Fourteenth Amendments." *NAACP* v. *Alabama,* (1958) 357 U. S. 449, 78 S. Ct. 1163, 2 L. ed. 2d 1488; *Bates* v. *Little Rock,* (1960) 361 U. S. 516, 80 S. Ct. 412, 4 L. ed. 2d 480; *Shelton* v. *Tucker,* 364 U. S. 479, 81 S. Ct. 247, 5 L. ed. 2d 231; *N. A. A. C. P.* v. *Button, supra;* and *Gibson* v. *Florida Legislative Investigation Committee,* (1963) 372 U. S. 539, 83 S. Ct. 889, 9 L. ed. 2d 929.

In *NAACP* v. *Alabama, supra,* 357 U.S. at page 460, 78 S. Ct. at page 1171, 2 L. ed. 2d at page 1498, this is said:

"It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment which embraces freedom of speech."

"It is hardly a novel perception that compelled disclosure of affilia-

tion with groups engaged in advocacy may constitute [an] effective * * * restraint on freedom of association * * *. This Court has recognized the vital relationship between freedom to associate and privacy in one's associations * * *. Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." 357 U. S. at page 462, 78 S. Ct. at pages 1171-1172, 2 L. ed. 2d at pages 1499-1500. *Bates* v. *Little Rock, supra,* 361 U. S. at page 523, 80 S. Ct. at page 416, 4 L. ed. 2d at page 485; *Gibson* v. *Florida Legislative Investigation Committee, supra,* 372 U. S. at page 544, 83 S. Ct. at pages 892-983, 9 L. ed. 2d page 934.

In *N. A. A. C. P. Legal Defense and Educational Fund, Inc.* v. *Harrison, et al.,* Circuit Court of the City of Richmond, Virginia, 1962, reported unofficially in 7 Race Rel. L. Rep. 864 and 1216, it was held that statutes requiring disclosure of donors and registration and data on persons and groups seeking funds for litigation were invalid as applied to Fund, and as to every activity of the NAACP, except lobbying and causing violence.

Also, see *Joseph A. Jordan, et al.* v. *J. C. Hutcheson, Chairman of Virginia's Legislative Committee on Offenses Against the Administration of Justice, et al.,* decided September 17, 1963, 323 F. 2d 597, [4th Cir.].

We turn next to the question whether Committee has shown a convincingly substantial relation between the disclosure it seeks sufficient to justify the prejudicial effect which the disclosure may have upon the free exercise of the constitutional rights of appellants.

Appellee argues that the interest of the State in the disclosure of the names of donors is in its concern for its power of taxation, specifically the power to require correct income tax returns.

In Virginia, individual income tax returns are filed with local commissioners of the revenue, whose duty is to audit the returns and assess the taxes. Code, §§ 58-110 and 58-111, 1959 Rep. Vol. The returns are then forwarded to the State Department of Taxation, where further audit and review are authorized. Code, § 58-112, 1959 Rep. Vol. Certain charitable contributions are permitted to be deducted from gross income. Section 58-81 (m) (2), 1959 Rep. Vol. Contributions to an organization which supports litigation to which the donor is not a party, or in which he has no direct interest may not be deducted. Section 58-84.1, 1959 Rep. Vol. The evidence shows that 60% of the approximately one million income taxpayers in

Virginia use the optional standard deduction, the "short form" return on which there is no requirement for deductions to be itemized. Code, § 58-81 (q).

The evidence is that none of appellants had represented or suggested to donors or prospective donors that donations to them were deductible on the donors' income tax return. There was no evidence that any donor had ever made any such deduction, except the testimony of an assistant to the Director of the State Department of Taxation, that he had, during his employment, "heard" of one such instance in the past thirteen years.

The list of gifts submitted by Fund shows that it received from residents in Virginia for the years 1958, 1959, 1960 and part of 1961, donations in amounts of $25.00 or more, totaling only $16,-610.20. Thus, it can be seen that if every such donor had escaped taxes on his contribution in each of the above years, the State would have lost only $830.00 in revenue, even if each donor was in the highest State tax bracket of 5%. Code, § 58-101, 1959 Rep. Vol. The amount of revenue would have been considerably less if the donors had taken advantage of the optional standard deduction. Thus, it can be seen that the amount of taxable revenue involved is conjectural and insignificant. But more important still is the fact that the information sought by Committee is in the possession of the State on the returns of those subject to the payment of income taxes. The information can be readily gained by examining the returns or permitting Committee to do so, since all that is required is a glance at the page and line where the deductions are claimed.

There is no suggestion of any type of income tax legislation which would protect the interest of the State to a greater extent than the system now in effect. No reason has been given which would lead to the belief that donors to the organizations involved would more likely violate the tax laws than any other persons.

In *NAACP* v. *Alabama, supra*, 357 U. S., the Attorney General of Alabama sought the names and addresses of all the members and agents of the NAACP in Alabama, without regard to their positions or functions in the NAACP, in order to determine whether the Association was conducting intrastate business in violation of a State registration statute. Disclosure was denied because the State failed to show any substantial relevancy between its power to require a foreign corporation to register in Alabama, and the right of the

members of the NAACP to pursue their lawful private interests privately and to associate with others in doing so.

In *Bates* v. *Little Rock, supra,* 361 U. S., the Court struck down a clause in a municipal licensing tax ordinance which required disclosure of membership lists of certain organizations, because the disclosure had no relation to the taxes imposed.

In *Shelton* v. *Tucker, supra,* 364 U. S., the Court held unconstitutional a statute of Arkansas which undertook to compel every teacher, as a condition of employment in a state-supported school or college, to file annually an affidavit listing any organizations to which he or she might belong. In doing so, the Court said:

"Though the governmental purposes be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same basic purpose." 364 U. S., at page 488.

In *N. A. A. C. P.* v. *Button, supra,* 371 U. S., the Court held that Virginia had no such overriding and compelling interest in regulating the legal profession as would justify a statutory effort to obtain information to aid the enforcement of certain regulations. Said the Court:

"(O)nly a compelling State interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." 83 S. Ct. 341.

In *Gibson* v. *Florida Legislative Investigation Committee, supra,* 372 U. S., where a legislative committee sought to determine the extent of communistic influence in the NAACP by ordering the President of its Miami Branch to furnish the committee with membership records of his organization, and inform the committee which, if any, of its members were identified as communists, the Court held that there was not shown any substantial connection between the NAACP and communistic activities, and that disclosure could not be required. This was added:

"To permit legislative inquiry to proceed on less than an adequate foundation would be to sanction unjustified and unwarranted intrusions into the very heart of the constitutional privilege to be secure in associations in legitimate organizations engaged in the exercise of First and Fourteenth Amendment rights." 83 S. Ct., at page 900.

We conclude that while the State has power to conduct legislative investigations in order to protect its legitimate and vital interests, Virginia has here exceeded that power in intruding into an area of constitutionally protected right of freedom and privacy of association, and has failed to show such an overriding and compelling state interest in obtaining correct income tax returns as to justify substantial abridgement of associational freedoms, which disclosure of names of donors to appellants' activities would effect.

Each of the two questions which we have here considered involves the construction and application of provisions of the Federal Constitution, and each question has been clearly and unequivocally answered in the affirmative by the Supreme Court, the final and conclusive authority on the subject.

For the reasons stated, we hold that the trial court erred in refusing to sustain the motions of appellants to quash the summonses issued against them, and accordingly its order in each case must be reversed and the proceedings against appellants dismissed. It is so ordered.

*Reversed and dismissed.*