## CIRCUIT COURT OF FAIRFAX COUNTY

In re Subpoena
Duces Tecum to
America Online, Inc.

January 31, 2000

Case No. (Misc. Law) 40570

BY JUDGE STANLEY P. KLEIN

This matter is before the Court on America Online, Inc.'s ("AOL") Motion to Quash Subpoena seeking disclosure of identifying information for four AOL Internet service subscribers.

Plaintiff Anonymous Publicly Traded Company ("APTC") seeks to learn the identities of the subscribers so that it can properly name them as defendants in an action it has instituted in the State of Indiana. AOL asserts that the First Amendment rights of its subscribers preclude APTC from obtaining the relief it seeks in this Court. For the reasons set forth in this opinion, the Motion to Quash is denied.

### I. *Background*

APTC filed suit in Indiana, anonymously, under the pseudonym of APTC, against five individuals ("John Does") alleging that the John Does published in Internet chat rooms certain defamatory material, misrepresentations, and

confidential material insider information concerning APTC "in breach of the fiduciary duties and contractual obligations owed to [APTC]." *See* AOL's Motion to Quash Subpoena, Ex. A, Complaint For Injunctive Relief And Damages. In the Indiana proceedings, APTC sought and obtained from the Court an Order Authorizing Plaintiff To Conduct Discovery In Virginia And Requesting Assistance Of State Of Virginia Trial Courts To Issue Subpoena In Support Of Indiana Discovery. Pursuant To Va. Code § 8.01-411, the Clerk of this Court issued a Request For Production To Non-Party, America Online, Inc., to produce any and all documents from which the identity of the four AOL subscribers could be ascertained.[1] As a result of informal discussions between counsel, APTC learned that AOL was unwilling to voluntarily comply with the subpoena, in part, because APTC had failed to identify its true name in the Indiana proceedings.[2] APTC then filed a motion in the Indiana proceedings to allow it to proceed anonymously until the John Does were identified. On October 15, 1999, the instant Motion Of America Online, Inc., to Quash Subpoena Or, In The Alternative, For A Protective Order was filed with the Clerk of this Court. On October 19, 1999, the Indiana court entered an order authorizing APTC to maintain its anonymity in the Indiana proceedings until APTC determines the identity of the John Does. The Indiana court further ordered that if APTC then decides to go forward with the Indiana lawsuit, it will have to identify both the defendants and itself in an amended complaint. *See* APTC's Opposition to AOL's Motion to Quash, Ex. A.

On October 29, 1999, this Court heard oral argument and took the matter under advisement. Counsel were granted leave to file supplemental briefs and both parties elected to do so. In its supplemental brief, APTC offered to supply the Court with copies of the subject "chat room" postings for *in camera* review. Response of Anonymous Publicly Traded Company to Supplemental Memorandum of America Online, Inc., at 5, n. 10. After full consideration of the pleadings and the arguments of counsel, the Court determined that a review of the postings would be appropriate in this case and so advised counsel. The Court received copies of some postings from counsel for APTC and, on December 21, 1999, conducted a further hearing by

---

[1] AOL does not challenge the procedural propriety of the subpoena duces tecum issued by the Clerk.

[2] AOL acknowledged on brief that it has complied with hundreds of similar subpoenas issued by Virginia courts when it has been satisfied (1) that the party seeking the information has pleaded with specificity a prima facie claim that it is the victim of particular, specified tortious conduct and (2) that the subpoenaed identity information was centrally needed to advance the claim. AOL's Supplemental Memorandum In Support of Motion To Quash at 4-5.

telephone conference with counsel to confirm that the Court had received copies of all the relevant postings. During the hearing, counsel for APTC determined that it had not submitted all of the relevant postings; and, as a result, counsel for APTC that day forwarded copies of all of the relevant postings to the Court and to counsel of AOL. The Court allowed counsel for APTC to redact APTC's true name from the copies supplied to counsel for AOL. The Court further agreed to file the redacted copies of the postings in the Court's file and to place the unredacted copies of the postings in the Court's file under seal. On December 23, 1999, the Court received a letter from counsel for AOL addressing the contents of the postings. Counsel also reiterated his objection to the Court's consideration of the postings. Ironically, it was counsel's own arguments that convinced this Court to review the contents of the allegedly tortious postings rather than defer to the orders of the Indiana court. The Court has now considered all of the submissions of the parties and the relevant authorities.

## II. *Analysis*

AOL contends that the subpoena duces tecum issued by the Clerk of this Court unreasonably impairs the First Amendment rights of the John Does to speak anonymously on the Internet and therefore should be quashed pursuant to Supreme Court Rule 4:9(c). APTC responds (1) that this Court's analysis should be limited to whether the subpoena is procedurally defective; (2) that this Court must defer to the orders of the Indiana court under principles of comity; (3) that AOL has no standing to assert the free speech rights of the John Does; and (4) that the subpoena would not unreasonably burden the John Does' free speech or privacy rights. During oral argument, counsel for APTC conceded that First Amendment interests are implicated in the issue now before this Court.[3] Therefore, the Court will address each of APTC's arguments why those First Amendment interests should not be determinative in this matter.

Rule 4:9(c) reads, in pertinent part, as follows:

*Production by a Person Not a Party.* — Upon written request therefor filed with the clerk of the court in which the action or suit is pending by counsel of record for any party . . . the clerk shall . . .

---

[3] As a result of this concession, the Court need not rule on whether First Amendment principles affect the issuance of a subpoena by a court in a dispute solely between private citizens. *See e.g. Britt v. Superior Court of San Diego County*, 574 P. 2d 766, 773-74, n. 3 (Cal. 1978).

issue to a person not a party therein a subpoena duces tecum which shall command the person to whom it is directed . . . to produce the documents and tangible things . . . designated and described in said request . . . But, *the court, upon written motion promptly made by the person so required to produce,* or by the party against whom such production is sought, *may quash or modify the subpoena if it is unreasonable and oppressive.*

Va. S. Ct. Rule 4:9(c) (emphasis added). AOL is the person/entity being required to produce documents under the subpoena and, therefore has standing to challenge the subpoena, according to the plain language of Rule 4:9(c).

In reviewing AOL's challenge, the Court must consider whether the subpoena served on AOL is unreasonable *and* oppressive. The second prong, which prohibits oppressive subpoenas, clearly applies to the effect of the subpoena on the challenging entity. However, it is unclear whether the first prong requires that a subpoena be reasonable (a) with respect to the burdens placed upon the entity challenging the subpoena or (b) with respect to *all* of the circumstances surrounding the subpoena. If the reasonableness prong is construed to apply only to the challenging entity, then the reasonableness prong does not add any meaning beyond the oppressiveness prong. Applying the reasonableness prong to all of the circumstances surrounding the subpoena gives meaning to all of the words of the rule. *See generally Commonwealth v. Jones*, 194 Va. 727, 731 (1953) (holding that a statute should be construed so as to give effect to all its component parts). Therefore, this Court holds that the legal standard to be applied when ruling on a motion to quash a subpoena under Rule 4:9(c) is whether the subpoena is (1) an unreasonable request in light of all the circumstances surrounding the subpoena or (2) that produces an oppressive effect on the entity challenging the subpoena.

## A. *According Comity to the orders of the Indiana Court*

As no final judgment has yet been rendered in the Indiana proceedings, this Court is not bound by the rulings of that court. *See Baker By Thomas v. General Motors Corp.*, 522 U.S. 222, 118 S. Ct. 657, 663-64 (1998) (Full Faith and Credit Clause of the United States Constitution applies only to final judgments of courts of competent jurisdiction.) Nonetheless, APTC asserts that under traditional notions of comity, this Court should not re-examine the merits of the Indiana court's decision (1) to authorize the issuance of the subpoena duces tecum to AOL to produce documents pertaining to the

identities of the John Does or (2) to allow APTC to proceed temporarily under a pseudonym.

Traditional notions of comity have long been recognized in Virginia and rest upon "mutual interest and convenience, from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return." *McFarland v. McFarland*, 179 Va. 418, 430 (1942). Although this Court firmly believes in the principles underlying comity and has often deferred to non-binding decisions of judges of other trial courts in Virginia and elsewhere, it is unwilling to blindly defer to a ruling of another court which could substantially abridge the constitutional rights of the John Does. This is especially true when, as here, the judge issuing the order did not have the benefit of the arguments and authorities supporting the positions of both sides. As such, this Court believes it entirely appropriate to analyze the propriety of the issuance of the subpoena duces tecum, as it would be this Court's order, not the Indiana court's order, which would directly abridge the First Amendment rights of the John Does.

However, the Court's analysis of the deference to be given to the Indiana judge's ruling allowing APTC to proceed anonymously for a limited period of time is somewhat different. Although there is clearly a First Amendment interest in ensuring that what takes place in the courtrooms of the United States is open for public scrutiny, the public's right of access is not absolute. Moreover, the right to open inspection of the proceedings in our courtrooms does not necessarily equate to a right to immediately know the identity of the parties litigating in those courtrooms. As the United States Court of Appeals for the Fifth Circuit has noted:

> The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical. The public right to scrutinize governmental functioning is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials are not inevitably compromised by allowing a party to proceed anonymously.

*Doe v. Stegall*, 653 F.2d 180, 185 (1981) (citations omitted).

As any First Amendment right of the public to know the identity of the plaintiff in the Indiana proceedings will only be marginally affected at these

preliminary stages of those proceedings, this Court believes that comity should be accorded to the Indiana court's decision, under its Trial Rules, to allow APTC to proceed anonymously for a limited period of time. Although the Indiana court did not have the benefit of a brief from AOL when it authorized APTC to maintain its anonymity after AOL filed the instant motion, counsel herein agree that the Indiana court was then aware of AOL's objection. In addition, at least part of the salutary prophylactic effect of requiring openness in judicial proceedings has been assured by this Court's requirement that APTC supply copies of the relevant Internet postings to opposing counsel and to the Court. Both this Court and the John Does now either know or can readily ascertain the true identity of APTC. Consequently, any possible abuses of the judicial system by APTC in initiating either the proceeding in the Indiana court or in this Court can be addressed by the respective courts under applicable statutes authorizing sanctions. Hence, this Court defers, in its analysis of the issues before this Court, to the Indiana court's determination to allow APTC to maintain its anonymity for a limited period of time.

## B. *Standing*

APTC argues that if the subpoena unreasonably burdens the First Amendment rights of the John Does, then the John Does are the proper parties to seek relief from the subpoena, not AOL. APTC's argument ignores longstanding precedent upholding the standing of third parties to seek vindication of First Amendment rights of others in situations analogous to the circumstances presented herein.

In *NAACP v. Alabama*, 357 U.S. 449 (1958), the United States Supreme Court considered a case involving a finding of contempt against the NAACP for its refusal to turn over its membership lists, after being ordered to do so by an Alabama state court judge. The Supreme Court rejected Alabama's argument that the NAACP lacked standing to assert the constitutional rights of its members, holding that the NAACP "argues more appropriately the rights of its members, and that its nexus with them is sufficient to permit that it act as their representative before this Court." *Id.* at 458-59. In so ruling, the Court addressed the potential effects that disclosure of the identities of its members might have on the NAACP itself:

> The reasonable likelihood that the Association itself through diminished financial support and membership may be adversely affected if production is compelled is a further factor pointing towards

our holding that petitioner has standing to complain of the production order on behalf of its members.

*Id.* at 459-60. Similarly, in *NAACP Legal Defense and Educ. Fund, Inc. v. Committee on Offenses Against the Admin. of Justice*, 204 Va. 693 (1963), the Virginia Supreme Court recognized the right of the NAACP to maintain the confidentiality of its member and donor lists, reasoning that:

> There can be no reasonable doubt that a disclosure of the names of those who support the activities of the appellants could have no result other than to injuriously affect the effort of appellants to obtain financial support in promoting their aims and purposes.

*Id.* at 698. *See also Virginia v. American Booksellers Assn.*, 484 U.S. 383, 392-93 (1998) (permitting third-party standing in First Amendment free speech context because of potential chilling effect of law on others). It cannot be seriously questioned that those who utilize the "chat rooms" and "message boards" of AOL do so with an expectation that the anonymity of their postings and communications generally will be protected. If AOL did not uphold the confidentiality of its subscribers, as it has contracted to do, absent extraordinary circumstances,[4] one could reasonably predict that AOL subscribers would look to AOL's competitors for anonymity. As such, the subpoena duces tecum at issue potentially could have an oppressive effect on AOL.

Moreover, it is questionable whether all, or any, of the subscribers have received actual notice of the pendency of these proceedings or have the inclination or financial ability to defend against the subpoenas. See affidavit of Carrie F. Davis and Ex. A therein. As the Supreme Court has recognized, when the right to anonymity is at issue, "to require that [the right] be claimed by the members themselves would result in nullification of the right at the very moment of its assertion." *NAACP v. Alabama*, 357 U.S. at 459. Hence, this Court holds that AOL has standing to assert the First Amendment rights of the John Does.

---

[4] See affidavit of Carrie F. Davis and Ex. A therein.

*C. Whether the Subpoena Would Unreasonably Burden the First Amendment Rights of the John Does*

As this Court has determined that the subpoena can have an oppressive effect on AOL, the sole question remaining is whether the subject subpoena is unreasonable in light of all the surrounding circumstances. Ultimately, this Court's ruling on the Motion to Quash must be governed by a determination of whether the issuance of the subpoena duces tecum and the potential loss of the anonymity of the John Does, would constitute an unreasonable intrusion on their First Amendment rights. In broader terms, the issue can be framed as whether a state's interest in protecting its citizens against potentially actionable communications on the Internet is sufficient to outweigh the right to anonymously speak on this ever-expanding medium. There appear to be no published opinions addressing this issue either in the Commonwealth of Virginia or any of its sister states.[5]

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech." This prohibition is equally applicable to the states under the Due Process Clause of the Fourteenth Amendment. *Pennekamp v. Florida*, 328 U.S. 331, 349 (1946); *Grosjean v. American Press Co.*, 297 U.S. 233, 244-45, 249 (1936). The unconditional wording of the First Amendment was not designed, however, to protect all forms of expression. *See Roth v. United States*, 354 U.S. 476, 483 (1957) (finding that obscenity is not protected by the First Amendment); *Beauharnais v. Illinois*, 343 U.S. 250, 266 (1952) (holding that libelous statements are outside the realm of constitutionally protected speech); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 573 (1942) (finding that "fighting words" are outside the scope of First Amendment protections).

Inherent in the panoply of protections afforded by the First Amendment is the right to speak anonymously in diverse contexts. This right arises from a long tradition of American advocates speaking anonymously through pseudonyms, such as James Madison, Alexander Hamilton, and John Jay, who authored the Federalist Papers but signed them only as "Publius." In *Talley v. California*, 362 U.S. 60, 64 (1960), the Supreme Court recognized that "[a]nonymous pamphlets, leaflets, brochures and even books have played an

---

[5] Although the framework for an analysis of this specific issue appeared to be present in *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999), the court, in rendering its ruling, focused solely on the procedural propriety of allowing discovery before service of process was effected.

important role in the progress of mankind," and held that the distribution of unsigned handbills urging a boycott of certain merchants, who were allegedly involved in discriminatory practices, fell within the ambit of the protections afforded by the First Amendment.

In *McIntyre v. Ohio Elections Comm'n.*, 514 U.S. 334 (1995), the Supreme Court again examined the breadth of the right to anonymity protected by First Amendment principles. Noting that famous works of literature had been penned by authors utilizing assumed names, the Court recognized that "[t]he decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or *merely by a desire to preserve as much of one's privacy as possible.*" *Id.* at 341-42 (emphasis added). Specifically acknowledging that "the freedom to publish anonymously extends beyond the literary realm," the Supreme Court held in *McIntyre* that an Ohio law prohibiting distribution of anonymous campaign literature was constitutionally infirm. *Id.*

This Court must now decide whether the First Amendment right to anonymity should be extended to communications by persons utilizing chat rooms and message boards on the information superhighway. It is beyond question that thousands, perhaps millions, of people communicating by way of the Internet do so with a "desire to preserve as much of [their] privacy as possible." *McIntyre*, 514 U.S. at 342. "Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer." *Reno v. ACLU*, 521 U.S. ___, 117 S. Ct. 2329, 2344 (1997). To fail to recognize that the First Amendment right to speak anonymously should be extended to communications on the Internet would require this Court to ignore either United States Supreme Court precedent or the realities of speech in the twenty-first century. This Court declines to do either and holds that the right to communicate anonymously on the Internet falls within the scope of the First Amendment's protections.

As AOL conceded at oral argument,[6] however, the right to speak anonymously is not absolute. *See McIntyre*, 514 U.S. at 353 ("We recognize that a State's enforcement interest might justify a more limited identification requirement.") In that the Internet provides a virtually unlimited, inexpensive, and almost immediate means of communication with tens, if not hundreds, of millions of people, the dangers of its misuse cannot be ignored. The protection of the right to communicate anonymously must be balanced against the need

---

[6] Tr. at 14.

to assure that those persons who choose to abuse the opportunities presented by this medium can be made to answer for such transgressions. *See Denver Area Ed. Tel. Consortium v. FCC*, 518 U.S. 727, 741 (1996) (stating that First Amendment jurisprudence has always "embodie[d] an overarching commitment to protect speech . . . but, without imposing judicial formulas so rigid that they become a straightjacket that disables government from responding to serious problems"). Those who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights.

APTC's Indiana Complaint for Injunctive Relief and Damages alleges that its current and/or former employees have made defamatory material misrepresentations concerning APTC. It further alleges that the John Does have published confidential material information about APTC, in violation of the John Does' fiduciary and contractual duties to APTC, that "will cause [APTC] to continue to suffer immediate and irreparable injury, loss and damages including potentially adversely affecting the value of its publicly traded stock." Motion of AOL to Quash Subpoena, Ex. A, Complaint For Injunctive Relief And Damages ¶ 8.

Any defamatory statements made by one or more of the John Doe defendants would not be entitled to any First Amendment protection. *Beauharnais v. Illinois*, 343 U.S. 250, 266 (1992). Moreover, the release of confidential insider information, relating to a publicly traded company, through a medium such as the Internet, is no less pernicious than the libelous statements that fall outside the scope of First Amendment protections. In this age of communication in cyberspace, the potential dangers that could flow from the dissemination of such information increase exponentially as the proliferation of shareholder chat rooms continues unabated and more and more traders utilize the Internet as a means of buying and selling stocks. As such, the wrongful dissemination of such information through the Internet may also fall outside the scope of First Amendment protections. This Court, however, need not decide that question. Nor must it decide whether less than a compelling state interest might be sufficient to vitiate the anonymity of the John Does herein, because this Court finds that, under the circumstances of this case, the State of Indiana clearly has a compelling state interest to protect companies operating within its borders[7] from such wrongful conduct.[8] To rule

---

[7] APTC is a Delaware corporation with its principal place of business in Indianapolis, Indiana. *See* Complaint For Injunctive Relief And Damages ¶ 1.

36

otherwise would leave companies such as APTC virtually defenseless to this potentially virulent hazard.

Nonetheless, before a court abridges the First Amendment right of a person to communicate anonymously on the Internet, a showing, sufficient to enable that court to determine that a true, rather than perceived, cause of action may exist, must be made. AOL proposes that this Court adopt the following two prong test to determine when a subpoena request is reasonable and accordingly would require AOL to identify its subscribers: (1) the party seeking the information must have pleaded with specificity a prima facie claim that it is the victim of particular tortious conduct and (2) the subpoenaed identity information must be centrally needed to advance that claim. See AOL's Supplemental Memorandum In Support of Motion to Quash at 4-5. APTC responds that this Court should not, in any way, address the merits of its claim and should merely follow the procedures that APTC asserts are compelled by Va. Code § 8.01-411.[9] Although this Court agrees with AOL that APTC must establish that there is a legitimate basis to believe that it may have *bona fide* claims against the John Does before compliance with the subpoena duces tecum is ordered, it agrees with APTC that AOL's proposed test is unduly cumbersome. What is sufficient to plead a prima facie case varies from state to state and, sometimes, from court to court. *Compare CaterCorp v. Catering Concepts, Inc.*, 246 Va. 22 (1993), with *Russo v. White*, 241 Va. 23 (1991). This Court is unwilling to establish any precedent that would support an argument that judges of one state could be required to determine the sufficiency of pleadings from another state when ruling on matters such as the instant motion.

---

[8] Generally, only a compelling state interest can justify burdening First Amendment rights. *See FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 256 (1986); *NAACP v. Button*, 371 U.S. 415, 438 (1963).

[9] In its Response of Anonymous Publicly Traded Company To Supplemental Memorandum of America Online, Inc., APTC sets out five reasons why the Court should not adopt AOL's proposed two prong test: (1) AOL's written policy allows it to release subscriber information to protect AOL's interests; (2) the Uniform Foreign Deposition Act, Va. Code § 8.01-411, prescribes compliance with state process, not ruling on substantive issues of foreign law; (3) this Court should defer to the Indiana court to make rulings concerning the substantive law of Indiana; (4) to the extent that First Amendment issues are truly implicated, the Indiana courts are equally capable of deciding the issues; and (5) acceptance of AOL's position would enable nonparties to litigate the substantive merits of foreign lawsuits without Virginia courts retaining the ability to draw meaningful boundaries for such litigation.

The Court was initially inclined to defer to the judgment of the Indiana court, which seemingly has validated the sufficiency of APTC's Complaint, first by authorizing the out-of-state subpoena request and then by allowing APTC to maintain its anonymity, notwithstanding the known opposition of AOL. However, the Court eventually determined that further examination of the *bona fides* of APTC's claims was necessary in order to properly evaluate the reasonableness of the subpoena request in light of all the surrounding circumstances. Consequently, this Court required APTC to produce the subject Internet postings, so that the Court could better determine whether there is, in fact, a good faith basis for APTC's allegations.

Therefore, in lieu of the test proposed by AOL, this Court holds that, when a subpoena is challenged under a rule akin to Virginia Supreme Court Rule 4:9(c), a court should only order a non-party, Internet service provider to provide information concerning the identity of a subscriber (1) when the court is satisfied by the pleadings or evidence supplied to that court (2) that the party requesting the subpoena has a legitimate, good faith basis to contend that it may be the victim of conduct actionable in the jurisdiction where suit was filed and (3) the subpoenaed identity information is centrally needed to advance that claim. A review of the Indiana pleadings and the subject Internet postings satisfies this Court that all three prongs of the above-stated test have been satisfied as to the identities of the subscribers utilizing the four e-mail addresses in question.

In his December 22, 1999, correspondence to the Court, counsel for AOL argued that the methodology utilized by APTC in obtaining the AOL e-mail addresses in question is far from foolproof. This Court recognizes that the methodology may be less than totally certain and that some of the postings may turn out to be from persons who owe no fiduciary or contractual duty to APTC. Nonetheless, this Court finds that the compelling state interest in protecting companies such as APTC from the potentially severe consequences that could easily flow from actionable communications on the information superhighway significantly outweigh the limited intrusion on the First Amendment rights of any innocent subscribers. Hence, this Court finds that the instant subpoena duces tecum does not unduly burden the First Amendment rights of the John Does and is therefore not unreasonable in light of all the surrounding circumstances. Accordingly, AOL's Motion to Quash is denied in its entirety.[10]

---

[10] In its motion, AOL did not seek a protective order limiting APTC's use of the subpoenaed information solely to matters relating to the Indiana lawsuit.

### III. *Conclusion*

For the reasons set forth above, the Motion of America Online, Inc., to Quash Subpoena or, in the Alternative, for a Protective Order is denied.