# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0073
════════════

══════════════════════════════════════════════════════════
In re John Doe a/k/a "Trooper", Relator
══════════════════════════════════════════════════════════

══════════════════════════════════════════════════════════
On Petition for Writ of Mandamus
══════════════════════════════════════════════════════════

JUSTICE LEHRMANN, joined by JUSTICE JOHNSON, JUSTICE BOYD, and JUSTICE DEVINE, dissenting.

The ever-rising cost of litigation impacts the ability of ordinary citizens to access our courts to pursue justice. Today the Court misinterprets our rules of civil procedure to create a quagmire for persons injured by anonymous Internet bloggers by forcing them to either file potentially fruitless lawsuits in an attempt to determine the identity of the alleged wrongdoer or waive redress. At best, this unnecessarily increases litigation costs for those persons injured by online defamation, while imposing additional burdens on our already overloaded court system. At worst, it deprives injured parties of reparation.

In today's case, involving the permissible scope of pre-suit discovery in Texas, the Court holds that the applicable procedural rule requires that personal jurisdiction be established over an anticipated defendant—even when that defendant's identity is withheld—before such discovery may be granted. And it does so despite the fact that it would be impossible for a court to make the required minimum-contacts determination with respect to a potential party who refuses to reveal the

jurisdictional facts (such as identity and domicile) that form the basis for that decision. This effectively abolishes a cause of action for defamation against a person who claims anonymity, particularly when the defamation occurs online. Because the Court requires a premature and impossible showing, in the process allowing an alleged tortfeasor to hide behind his anonymity regardless of whether the First Amendment allows it, I respectfully dissent.

**I.**

For all its virtues as a forum for communication, the Internet also presents many dangers. This is particularly true when speech is published anonymously. "[A]nonymity in cyberspace is not just different in degree from anonymity in real space . . . . [I]t is the ability to hide absolutely who one is." Lawrence Lessig, *Reading the Constitution in Cyberspace*, 45 EMORY L.J. 869, 876–77 (1996). In many instances, this diminution in accountability results in a proliferation of defamatory speech. Michael S. Vogel, *Unmasking "John Doe" Defendants: The Case Against Excessive Hand-Wringing over Legal Standards*, 83 OR. L. REV. 795, 821–22 (2004). With the simple touch of a button, an anonymous speaker can disseminate defamatory statements to millions of readers, ruining reputations and sabotaging careers. To make matters worse, in contrast to written statements transmitted in more traditional form, like pamphlets or letters, anonymous online statements—and the people who issue them—are impossible to track without the help of the Internet service provider.

As such, modern technology has made the ability to seek redress for injury due to defamation that much more important, and that much more difficult. In the face of these modern-day realities, today the Court further cripples that ability, effectively extinguishing the claims of those who have the misfortune of being defamed by one who conceals his identity. And it does so irrespective of

whether the alleged defamer's anonymity is protected by the First Amendment. Quite simply, Texas law provides a right of recourse to those injured by defamation. TEX. CONST. art. I, § 13; *Neely v. Wilson*, 418 S.W.3d 52 (Tex. 2013). That right should not be compromised simply because the defamatory speech occurs anonymously, as is frequently the case online.

## II.

In this case, The Reynolds & Reynolds Co. and its CEO Robert Brockman (collectively, Reynolds) sought pre-suit discovery under Texas Rule of Civil Procedure 202. Specifically, Reynolds petitioned the trial court for an order requiring Google to disclose information that would reveal the identity of "the Trooper"—the anonymous blogger that Reynolds and Brockman anticipated suing for defamation, business disparagement, and breach of fiduciary duty. The petition complained of statements on the Trooper's blog that compared Brockman to Bernie Madoff, proclaimed that Brockman "stole from everyone equally," and asserted that Brockman had a reputation for being "a crook" in his community.

Rule 202 provides that a petition for an order authorizing a deposition upon written questions for use in an anticipated suit must "be filed in a proper court of any county: (1) where venue of the anticipated suit may lie, if suit is anticipated; or (2) where the witness resides, if no suit is yet anticipated." TEX. R. CIV. P. 202.2(b). Reynolds filed the petition in Harris County, which qualifies as a county "where venue of the anticipated suit may lie" in light of the verified allegations that Brockman resided there. TEX. CIV. PRAC. & REM. CODE § 15.017 (providing that a defamation suit may be filed "in the county in which the plaintiff resided at the time of the accrual of the cause of action"). However, the Court holds that Reynolds failed to file the Rule 202 petition in a "proper

3

court" because the petition lacked allegations showing the trial court had personal jurisdiction over the anonymous Trooper.[1]

As an initial matter, I question whether personal jurisdiction over an anticipated defendant is ever a prerequisite to obtaining pre-suit discovery. The rule itself makes no mention of personal jurisdiction, which stands to reason given that the rule permits discovery even when the petitioner is so uncertain about the nature of his claim that he does not yet anticipate suit. This conclusion is consistent with the constitutional underpinnings of personal jurisdiction. From its very inception, the doctrine of personal jurisdiction has considered the due process implications of imposing binding judgment on a nonresident defendant. *See Pennoyer v. Neff*, 95 U.S. 714, 726 (1878). In the U.S. Supreme Court cases that have followed *Pennoyer*, the protection provided by the personal jurisdiction requirement has always been predicated on a defendant's facing the prospect of a binding judgment.[2] Put another way, the Fourteenth Amendment requires a plaintiff to litigate the difficult and complex question of personal jurisdiction—and protects a defendant from the burdens of litigating in a distant forum—only when the defendant may be subject to a final judgment. Before a defendant is put in that degree of peril, the question of personal jurisdiction has no place.

Significantly, even if the phrase "proper court" in Rule 202 contemplates personal jurisdiction over the anticipated defendant as a general matter, imposing this requirement when that

---

[1] There is no dispute that Texas courts have personal jurisdiction over Google, the entity from which the discovery is sought.

[2] *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011); *Burnham v. Superior Court of Cal.*, 495 U.S. 604 (1990); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Kulko v. Superior Court of Cal.*, 436 U.S. 84 (1978); *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Hess v. Pawloski*, 274 U.S. 352 (1927).

person chooses to remain anonymous undermines its rationale. In requiring courts to establish personal jurisdiction over potential defendants before signing a discovery order, the very purpose of which is to enable an individual to determine the identity of the person to be sued, the Court turns the rule on its head. In light of the rule's purposes, one of which is to permit a potential plaintiff to investigate her claim before filing suit, this construction is untenable.

Moreover, at its core, this holding effectively bars redress when the injury is the result of online activity. It is difficult at best to sue and serve citation on an anonymous "John Doe" defendant. This difficulty is magnified when the defendant is an online blogger whose identity is virtually impossible to uncover absent a procedural rule to allow for such disclosure. While it is conceivable that an injured party could file a lawsuit against "John Doe" and subpoena the nonparty Internet service provider to uncover the tortfeasor's identity, such a process is cumbersome, costly, inefficient, and possibly fruitless. It is particularly problematic in Texas given that, as the Court recognizes, the plaintiff bears the initial burden of pleading allegations sufficient to show personal jurisdiction over the defendant. ___ S.W.3d at ___ (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010)). And it is simply unnecessary, as a rule exists for this exact purpose. *See In re Does 1 & 2*, 337 S.W.3d 862, 864–65 (Tex. 2011) (holding that the trial court abused its discretion in failing to make the required findings under Rule 202 before ordering an Internet service provider to disclose the identity of an anticipated defendant).

The Court's understanding of Rule 202 subverts not only the purpose of pre-suit discovery, but the entire concept of personal jurisdiction. A court's exercise of personal jurisdiction over a party is predicated on an analysis of his connections with the forum state. *Kelly*, 301 S.W.3d at 655.

However, a court cannot conduct a minimum-contacts analysis while wearing a blindfold; when a party chooses to remain anonymous, a court is powerless to evaluate his connection to the forum state. Several federal district courts have noted as much, in the context of copyright infringement cases, when denying motions to quash subpoenas issued to Internet service providers to ascertain the identity of anonymous defendants. *See, e.g.*, *AF Holdings, LLC v. Does 1–162*, No. 11-23036-Civ., 2012 WL 488217, at *4 (S.D. Fla. Feb. 14, 2012) (noting that Doe Defendant's personal jurisdiction arguments were "premature," as the court was "without all of the information necessary to evaluate any personal jurisdiction challenges, in no small part because this Doe Defendant and others are anonymous—a problem to which the instant discovery is specifically addressed").[3] I agree with these courts that the question of personal jurisdiction is premature–and impossible to answer–when it is directed at an anonymous individual.

### III.

The Court concludes that interpreting Rule 202 not to require personal jurisdiction would "make Texas the world's inspector general." ___ S.W.3d at ___. I disagree. In the first place, I am unpersuaded that Texas will be inundated by parties seeking the discovery of anonymous individuals simply because Internet hosts may be served with Rule 202 petitions in our State. The Court does not cite, and I have not found, any authority from another state requiring a trial court to establish personal jurisdiction over an anonymous party before compelling revelation of his identity from

---

[3] *See also, e.g.*, *Bloomberg, L.P. v. Does 1–4*, No. 13 Civ. 01787(LGS), 2013 WL 4780036, at *4 (S.D.N.Y. June 26, 2013) (personal jurisdiction ruling would be "premature" absent identity of Doe defendants); *First Time Videos, LLC v. Does 1–76*, 276 F.R.D. 254, 259 (N.D. Ill. Aug. 16, 2011) (same); *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F. Supp. 2d 332, 345–48 (D.D.C. March 22, 2011) (same).

another source. In order for Texas to become a haven for those seeking pre-suit discovery of anonymous individuals, it must first become more attractive to petitioners than other states. We have not been presented with compelling evidence that this is the case. Indeed, some states that allow pre-suit discovery expressly recognize it as a mechanism to uncover the identity of an anticipated party. *See* OHIO CIV. R. 34(D)(3) (allowing pre-suit discovery that "is necessary to ascertain the identity of a potential adverse party"); *see also In re Cohen*, 887 N.Y.S.2d 424 (Sup. Ct. 2009) (holding that petitioner was entitled to "pre-action disclosure of information as to the identity of [an] [a]nonymous [b]logger" because she had "sufficiently established the merits of her proposed cause of action for defamation . . . and that the information sought [was] material and necessary to identify the potential defendant").

Second, the Court ignores the provisions of Rule 202 that operate more generally to prevent global discovery in Texas. The Court considers a situation in which no party asserts a constitutional right to anonymity and all parties have been identified: "[s]uppose a plaintiff sues an Alaska resident in Texas, the case is dismissed for want of personal jurisdiction, and undaunted, the plaintiff undertakes discovery in Texas under Rule 202 for what may eventually be a suit in Alaska." ___ S.W.3d at __. A trial court would likely abuse its discretion in granting the petition, not because it lacks jurisdiction over the Alaska resident, but because it would not work a failure or delay of justice to deny a petition when the litigation the parties contemplate will be conducted in a distant forum. TEX. R. CIV. P. 202.4(a)(1). Moreover, the benefit of allowing a petitioner to compel the deposition of the resident of a distant state would not outweigh the burden and expense of that procedure when the lawsuit does not concern Texas. TEX. R. CIV. P. 202.4(a)(2). In the very different case at bar,

7

the petitioner, who is a Texas resident, seeks to depose Google, a corporation with a Texas office, to ascertain the identity of an unknown anticipated defendant. It is not unreasonable to conclude that a trial court should deny the former petition and grant the latter.

Finally, the Court's holding does not reduce or circumscribe pre-suit discovery of anonymous parties in Texas. Instead, it is the end of such discovery. Again, when a party chooses to conceal his identity, he prevents the trial court from conducting a minimum-contacts analysis to determine whether it may exercise personal jurisdiction over him. I would not permit a party who issues defamatory speech to hide behind the Constitution to foreclose a lawsuit by remaining anonymous—not when that same document provides a recourse for such speech. TEX. CONST. art. I, §§ 8, 13. The plain language of the rule does not compel that result, and I would not adopt it.[4]

Further, any First Amendment right to anonymity the Trooper may have is protected irrespective of the personal jurisdiction issue.[5] Other jurisdictions have formulated varying standards governing the propriety of discovering the identity of anonymous defendants from Internet service providers in ongoing defamation litigation. Of those standards, the most lenient requires that a party seeking to uncover an anonymous individual's identity show only "a legitimate, good faith basis to contend that it may be the victim of conduct actionable in the jurisdiction where suit was filed." *In*

---

[4] The minimum-contacts requirements have nothing to do with protecting anonymity, but rather are intended to relieve defendants of the burdens associated with being forced to defend lawsuits in distant states. *See, e.g.*, *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996).

[5] I note that the U.S. Supreme Court has declined to locate in the First Amendment the broad right of an individual speaker to conceal his identity. Instead, laws requiring the revelation of a speaker's identity are considered, for First Amendment purposes, in conjunction with the nature of the speech being burdened. *See, e.g.*, *Watchtower Bible & Track Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 166–68 (2002) (religious speech); *Talley v. California*, 362 U.S. 60, 64 (1960) (political speech).

*re Subpoena Duces Tecum to Am. Online, Inc.*, No. 40570, 2000 WL 1210372, at *8, 52 Va. Cir. 26 (2000), *rev'd on other grounds sub nom.*, *Am. Online, Inc. v. Anonymous Publicly Traded Co.*, 542 S.E.2d 377 (Va. 2001). At the opposite end of the spectrum, the most stringent standard requires (1) that the party seeking such discovery produce evidence sufficient to support a prima facie case on each element of its cause of action, and (2) that the court balance "the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760–61 (N.J. Super. Ct. App. Div. 2001). The Supreme Court of Delaware has adopted a modified version of the *Dendrite* test, requiring the seeking party to produce evidence sufficient to support a prima facie case on those elements of its claim within its control. *See Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005).

The parties in this case dispute which, if any, of these standards should apply in the context of pre-suit discovery of an anonymous speaker's identity under Rule 202. *See* TEX. R. CIV. P. 202.4(a)(1) (providing that a trial court "must order a [pre-suit] deposition to be taken if, but only if, it finds that . . . allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in [the] anticipated suit"). Regardless of which standard is adopted, the findings required by Rule 202 to order pre-suit discovery will necessarily take First Amendment concerns into account.

## IV.

I would hold that a trial court need not establish personal jurisdiction over an anticipated defendant in order to authorize pre-suit discovery. At the very least, I would not require the trial

9

court to do the impossible and establish personal jurisdiction over an anonymous potential defendant as a condition precedent to ordering pre-suit disclosure of his identity. Because the Court erroneously holds that the trial court abused its discretion in ordering discovery under Rule 202 based on its lack of personal jurisdiction over the Trooper, I respectfully dissent.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** August 29, 2014