Joseph PILCHESKY, Appellant

v.

Judy GATELLI, as President of Scranton's City Council; as Councilwoman; and, in her individual capacity, Appellee

v.

Joanne Pilchesky and John Does.

Joseph Pilchesky, Appellee

v.

Judy Gatelli, as President of Scranton's City Council; as Councilwoman; and, in her individual capacity, Appellant

v.

Joanne Pilchesky and John Does.

Superior Court of Pennsylvania.

Argued Oct. 21, 2009.
Filed Jan. 5, 2011.

Joseph Pilchesky, pro se.

Molly D. Clark, Scranton, for Gatelli.

BEFORE: FORD ELLIOTT, P.J., FREEDBERG and COLVILLE *, JJ.

OPINION BY FREEDBERG, J.:

Joseph Pilchesky ("Appellant") appeals from the order of the trial court entered on October 1, 2008, directing him to disclose the identities of six John Doe defendants who appellee and cross-appellant Judy Gatelli ("Appellee") claims have pseudonymously published defamatory statements about her on an Internet message board hosted by Appellant. Appellee cross-appeals the order, seeking the identities of eight additional John Doe defendants. We quash the appeals in part, vacate the order and remand.

Appellant maintains a website located at www.dohertydeceit.com. The site publishes articles critical of the city government of Scranton, Pennsylvania. Attached to the site is the self-styled, "Scranton Political Times Message Board," where interested persons may observe ongoing discussions or may create a registered user account and participate in those discussions. Registered users select a unique username, or "pseudonym." Only registered users may post a message to the message board, and every posted message is attributed to a registered user's pseudonym. Appellant maintains a list of registered users and their message board pseudonyms. However, as mes-

---

* Retired Senior Judge assigned to the Superior Court.

sages are attributed only to pseudonyms, the true identity of the person posting the message is unknown to those viewing Appellant's message board. Certain of these message posts to Appellant's message board are the subject of this appeal and cross-appeal.

In April 2007, Appellant filed a complaint against Appellee, claiming defamation, retaliation and harassment. According to Appellant, Appellee, formerly the president of Scranton City Council,[1] falsely and publicly accused him of "terrorism, making death threats, stalking, harassment, harassment by communication [and] intimidation" in the course of his political activities and the operation of his website.

In response, Appellee filed an answer and counterclaim, claiming defamation, civil conspiracy, intentional infliction of emotional distress and abuse of process. According to Appellee, Appellant published numerous defamatory statements via his website, resulting in "injury to her good name and reputation . . . personal humiliation and embarrassment." Counterclaim, at ¶ 8. Appellee also filed a joinder complaint against Joanne Pilchesky, Appellant's wife, and approximately one hundred John Doe defendants, claiming defamation, civil conspiracy and intentional infliction of emotional distress. Contemporaneous to her joinder complaint, Appellee filed a petition to compel the disclosure of the identity of the John Doe defendants and a petition to prevent Appellant or his wife from destroying information relevant to this matter.

On May 24, 2007, the trial court issued a rule returnable, directing Appellant to show cause why Appellee's petition to compel should not be granted and, pending further order of court, precluding Appellant from "deleting, purging or otherwise disposing of any documents" concerning Appellee or the identity of the John Doe defendants. On June 14, 2007, Appellant filed preliminary objections on various grounds.

On September 26, 2007, the trial court heard oral argument on Appellee's petition and Appellant's preliminary objections.[2] The trial court denied the preliminary objections on October 10, 2007. Also on October 10, 2007, the trial court denied without prejudice Appellee's petition to compel for failure to provide sufficient information to warrant the disclosure of the identity of the John Doe defendants. The trial court ordered Appellee to file an amended petition, which specified the following:

(a) [T]he pseudonym of each additional defendant;

(b) [T]he complete message containing the actionable words posted by each additional defendant;

(c) [T]he cause or causes of action that she alleges based on those words;

(d) [E]vidence sufficient to establish a *prima facie* case against each additional defendant supported by affidavit; [and]

(e) [A]n affidavit asserting that the information is sought in good faith and is unavailable by alternative means.

---

1. Appellee was president of city council at the inception of this case but has since resigned from office.

2. The trial court granted an attorney associated with Public Citizen Litigation Group admission *pro hac vice* to represent seven of the John Doe defendants: Aquamg, Bigdaddy, Bopeep, Jimbu15, Katie, MistyMtTop, and

Newgirl ("represented Doe defendants"). Although not originally parties to this appeal, on April 2, 2009, this Court granted the represented Doe defendants leave to file a brief as appellees in this matter. No entry of appearance was filed on behalf of any other John Doe defendants.

Further, as Appellant maintained email contact information for each registered user of his website, the trial court ordered Appellant to forward to each John Doe defendant a copy of the trial court's order, Appellee's amended petition and all materials relevant to the additional defendant. Upon receipt of the amended petition and relevant materials, the trial court provided that it would grant each John Doe defendant thirty days to file an objection to disclosure of his identity. Finally, the trial court ordered Appellant to continue to comply with its order for the preservation of evidence.

On March 20, 2008, Appellee filed an amended petition, seeking disclosure of the identity of forty-six John Doe defendants. Attached to her amended petition, Appellee provided a single affidavit which addressed the trial court's requirements. Appellant objected to the disclosure of identity of any additional defendant. The attorney for the represented Doe defendants filed objections to disclosure on behalf of his clients whose identities were sought. No objections were filed by any of the unrepresented John Doe defendants. On October 1, 2008, the trial court issued a memorandum and order, granting the amended petition in part and directing Appellant to disclose the identity of six John Doe defendants.[3] The trial court did not direct the disclosure of the identity of any of the represented Doe defendants.

Appellant timely filed a notice of appeal of the October 1, 2008 order in the Commonwealth Court. Appellee filed a cross-appeal of the same order.[4] The appeals were consolidated and transferred to this Court.

Appellant presents the following questions for review:

3. The trial court identified the John Doe defendants by pseudonym and attributed the following statements to them:
 (1) Adam—"I had an encounter with her at a drug store. That bitch had the nerve to mention to me that Scranton is a far better place than it was before she was elected. I couldn't help myself and called her a Doherty blowjob right to her face. I gave it to her good. She left her stuff on the counter and all upset she walked out. Looking into her eyes is looking into something that transformed into something inhuman. She's got a cold deep look to her, pretty scary."
 (2) FRICKELLMOIE—"Judy and Sherry down on their knees S–E–R–V–I–N–G the King
 First came the insults
 Then came the lies
 Then came the re-call and our good byes . . ."
 (3) Lipstick and Lashes—"I love the cartoon and love the idea. I'll start downloading that pic now and distributing it. I have some words for those two whores, but they can't be said on TV."
 (4) 1 Musketeer—"Just when you thought Judy Gatelli was the world's biggest asshole, she shows up as the world's dumbest, biggest asshole. And where was the whore of all whores tonight? She was a no-show once again. Too afraid of questions? You can't make this crap up, she goes down in history as the ugliest woman to ever take council and the most dysfunction moran [sic] to ever be president."
 (5) Gatellis blue dress—"Yipee [sic], I made the list. What happens now? Does this mean that my free speech was not privileged? My opinions were threats? Wow. Does this mean Fat ass Judy Gatelli determines for us what free speech is? I don't think so, you fat-assed, no good, Doherty blowjob, crony-ridden piece of * * * *. Come and get me. Hey, Joe, give them anything you want on me."
 (6) MILOs Ghost—"Nazi–Protected Opinionated Free Speech deal with it. Whore.
Trial Court Memorandum and Order, October 1, 2008, at 5–7.

4. The trial court did not direct either party to file a Pa. R.A.P. 1925(b) statement.

1. [Whether the] trial court err[ed] at law or abuse[d] its discretion where it ordered the Appellant to disclose the identities of six (6) anonymous posters on the Appellant's political message board where the statements made by the posters were constitutionally protected by the First Amendment[; and]

. . .

2. [Whether the] trial court err[ed] at law or abuse[d] its discretion where it ordered the Appellant to disclose the identities of six (6) anonymous posters who used the Appellant's political message board to opinionate about the Appellee where discovery was in process that was already favorable to showing that the Appellee is unable to state a cause of action upon which relief can be granted relating to failure to show damages or injury[.]

Appellant's Brief, at 4.[5]

As to her cross-appeal, Appellee presents the following issue:

Whether or not the Court of Common Pleas of Lackawanna County abused its discretion by refusing to compel the disclosure of the identities of the following Appeal Defendants and Cross–Appeal Defendants: John Doe a/k/a Antisystemicmovements; John Doe a/k/a Bobby McGoof; John Doe a/k/a Brainwashed; John Doe a/k/a History Writer; John Doe a/k/a Milo Ferlicker; John Doe a/k/a NoRepresentation; John Doe a/k/a The Mole; and John Doe a/k/a City Haul[.]

Appellee's Brief, at 2.

Before addressing the merits of the questions presented, we must determine whether the order of the trial court is appealable,[6] as this implicates the jurisdiction of the Court.[7] We may do so *sua sponte*. *In re Miscin,* 885 A.2d 558, 561 (Pa.Super.2005).

 "Generally, discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation." *Leber v. Stretton,* 928 A.2d 262, 265 (Pa.Super.2007), *citing Makarov v. Lukenda,* 856 A.2d 163 (Pa.Super.2004), *appeal denied,* 596 Pa. 733, 945 A.2d 172 (2008); *Crum v. Bridgestone/Firestone North American Tire, LLC,* 907 A.2d 578 (Pa.Super.2006) (addressing the appealability of a pretrial discovery order). However, "[a]n appeal may be taken as of right from a collateral order of ... [a] lower court." Pa.R.A.P. 313(a); *Pridgen v. Parker Hannifin Corp.,* 588 Pa. 405, 905 A.2d 422 (2006); *Melvin v. Doe,* 575 Pa. 264, 836 A.2d 42, 47 (2003) *("Melvin II ")*; *Crum,* 907 A.2d at 584 (granting review of a discovery order deemed collateral to the underlying cause of action).

---

**5.** Originally, Appellant identified six issues for review. On January 30, 2009, Appellee filed a motion to dismiss and/or quash, or in the alternative, limit the issues raised on appeal. Appellant has waived consideration of those issues not preserved in his brief. *See* Pa. R.A.P. 2116, 2119. Accordingly, the motion is denied as moot.

**6.** An appeal may be taken from (1) a final order, *see* Pa.R.A.P. 341, 342, (2) an interlocutory order by right or permission, *see* 42 Pa. C.S.A. § 702(b); Pa.R.A.P. 311, 312, 1311, or (3) a collateral order, *see* Pa.R.A.P. 313. The order at issue here is not a final order; it is not an interlocutory order subject to appeal by right, and not one of the parties has sought permission to appeal.

**7.** In his statement of jurisdiction, Appellant asserts, "The Commonwealth Court has jurisdiction in this matter pursuant to 42 Pa.C.S.A. § 762[, defining the jurisdiction of the Commonwealth Court]. This is an appeal as of right from the Court of Common Pleas of Lackawanna County." Appellant's Brief at 1. The statute is not relevant to our determination. Neither Appellee nor the Represented Doe Defendants provide any basis for jurisdiction in their briefs.

A collateral order is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). All three factors must be present before an order may be considered collateral. *Melvin II*, 836 A.2d at 47; *Crum*, 907 A.2d at 583, *citing J.S. v. Whetzel*, 860 A.2d 1112, 1117 (Pa.Super.2004).

In *Melvin II*, the Pennsylvania Supreme Court determined that a trial court discovery order, which directed the disclosure of the identity of several John Doe defendants in a defamation claim brought by a public official, raised a question entitled to collateral review. *Melvin II*, 836 A.2d at 44–45 (vacating an order of the Superior Court, which had quashed an appeal of the discovery order). Crucial to its decision, the Supreme Court determined that the question presented was separable from the main cause of action:

> Consideration of whether a harmful defamatory statement was made (i.e., publication, falsity, defamatory meaning, actual malice, and actual harm) is not necessary. Rather, the issue ... present[ed] ... [is] strictly a legal one, entailing consideration of what threshold requirements must be imposed as a prerequisite to discovery in an anonymous defamation case in order to implement essential First Amendment protections. Such inquiry is plainly separable from the defamation action.

*Melvin II*, at 46. The Supreme Court also considered the importance of the right involved and whether it would be irreparably lost should appellate review be postponed until final judgment was rendered:

> [T]he court-ordered disclosure of [a]ppellants' identities presents a significant possibility of trespass upon their First Amendment rights. There is no question that generally, the constitutional right to anonymous free speech is a right deeply rooted in public policy that goes beyond this particular litigation, and that it falls within the class of rights that are too important to be denied review.

> Finally, it is clear that once [a]ppellants' identities are disclosed, their First Amendment claim is irreparably lost as there are no means by which to later cure such disclosure.

*Id.*, at 50.

However, the Supreme Court has admonished that the collateral order doctrine is narrow. *Rae v. Pennsylvania Funeral Directors Association*, 602 Pa. 65, 977 A.2d 1121 (2009); *Melvin II*, at 46; *see also Berkeyheiser v. A–Plus Investigations, Inc.*, 936 A.2d 1117 (Pa.Super.2007). In furtherance of this conception, the Supreme Court has adopted an issue-by-issue approach and restricted collateral appeals to those issues which independently satisfy the collateral order test. *Rae*, 977 A.2d at 1129;[8] *Melvin II*, at 44 (declining collateral review of the trial court's disposition of a motion for summary judgment); *Pridgen*, 905 A.2d at 432 (Pa.2006) (declining to resolve a question "because its resolution [would] entail a fact-based review of affida-

---

8. This stands in contrast to the "whole order approach," which would permit review of all issues surrounding a collateral order, provided that any one issue satisfied the test. *Rae* at 1127. The Court warned that "the whole order approach would almost certainly have the effect of increasing collateral review by encouraging creative advocates to raise claims which, while sufficient to satisfy Rule 313, are unlikely to prevail, so as to achieve immediate appellate review of secondary and otherwise unappealable claims." *Id.* at 1129.

vits, depositions, and other discovery materials, as opposed to resolution of a central legal controversy."); *see also Stewart v. Precision Airmotive, LLC*, 7 A.3d 266 (Pa.Super.2010) (rejecting nine of ten issues for which appellants sought collateral review). Accordingly, we must review each question presented by the parties to determine whether it is entitled to collateral review.

■ In the argument supporting his first question presented, Appellant contends that the trial court ordered disclosure of the identity of six John Doe defendants, in violation of their First Amendment rights, absent sufficient evidence to establish a *prima facie* case. This argument implicates the threshold requirements imposed by the trial court as a prerequisite to disclosure of the identity of six John Doe defendants. It is precisely the type of question previously accepted by our Supreme Court. *Melvin II*, at 46. Accordingly, Appellant has framed an issue entitled to collateral review.[9]

■ In support of his second issue, Appellant contends that he "was preparing below to file a Motion for Summary Judgment," and "discovery was in process that was already favorable to showing that the Appellee is unable to state a cause of action." Therefore, according to Appellant, the trial court's decision was premature. There is no claim which would be irrevocably lost should review of this issue be postponed until a final order has issued from the trial court. Appellant is free to move for summary judgment upon remand to the trial court. Accordingly, this issue is not entitled to collateral review.

■ Similarly, the question for which Appellee seeks review fails to meet the third requirement of the collateral order doctrine. Appellee claims the trial court abused its discretion by failing to order Appellant to provide her with the identities of additional John Doe Defendants. However, any error in this regard may be corrected on direct appeal once a final order has been issued. There is no need for immediate collateral review. Moreover, unlike the Constitutional right to

---

9. Appellee has not challenged Appellant's standing to raise First Amendment concerns. The Court may not raise standing *sua sponte*. *Rendell v. Pennsylvania State Ethics Commission*, 603 Pa. 292, 983 A.2d 708, 717 (2009). Further, there is significant authority supporting the view that a proprietor of a website has standing to oppose disclosure of the identities of pseudonymous authors of statements published on a website.

In the specific context of the First Amendment, the [United States] Supreme Court "has enunciated other concerns that justify a lessening of prudential limitations on standing." [*Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 956, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).] It has also relaxed these "rules of standing without regard to the relationship between the litigant and those whose rights he seeks to assert precisely because application of those rules would have an intolerable, inhibitory effect on freedom of speech." *Ei-*

*senstadt v. Baird*, 405 U.S. 438, 445 n. 5, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

*Enterline v. Pocono Medical Center*, 2008 WL 5192386, at *4 (M.D.Pa.2008) (a newspaper has "third-party standing to assert the First Amendment rights of [psuedonymous] individuals posting to [its] online forums."); *see also O'Grady v. The Superior Court*, 139 Cal. App.4th 1423, 44 Cal.Rptr.3d 72 (2006) (in terms of California's reporters' shield law, a website publisher was permitted to keep his sources confidential); *In re Verizon Internet Servs., Inc.*, 257 F.Supp.2d 244, 258 (D.D.C. 2003) (an Internet service provider had standing to assert the rights of its anonymous subscribers), *rev'd on other grounds*, *RIAA v. Verizon*, 351 F.3d 1229 (D.C.Cir.2003); *In re Subpoena Duces Tecum to AOL, Inc.*, 52 Va. Cir. 26, 2000 WL 1210372, at *5 (Va.Cir.Ct. 2000), *rev'd on other grounds*, *America Online, Inc. v. Anonymous Publicly Traded Co.*, 261 Va. 350, 542 S.E.2d 377 (2001).

anonymous speech at risk in the context of Appellant's first issue, Appellee does not stand to lose any comparably important right. Accordingly, the cross-appeal of Appellee is quashed.

■■ The First Amendment protects the right to speak anonymously.[10] *Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton et al.*, 536 U.S. 150, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002) (holding that an ordinance requiring individuals to obtain a permit prior to engaging in door-to-door advocacy · and to display the permit upon demand violated the First Amendment); *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) ("[E]ven in the field of political rhetoric, where the identity of the speaker is an important component of many attempts to persuade, the most effective advocates have sometimes opted for anonymity[.]") (quotations and citation omitted); *Talley v. California*, 362 U.S. 60, 65, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) (in the context of a dispute over a local ordinance prohibiting the dissemination of anonymous hand-bills, noting that "there are times and circumstances when States may not compel members of groups engaged in the dissemination of ideas to be publicly identified."). However, this right is not absolute.

> [W]ith regard to free speech generally, the States have justifiable interests in preventing certain evils. The Court has specifically stated that libel is one of those evils that the States have justifiable interests in guarding against:

The legitimate state interest underlying the law of libel is the compensation of individuals for the harm inflicted on them by defamatory falsehood. We would not lightly require the State to abandon this purpose, for ... the individual's right to the protection of his own good name reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty.

*Melvin II*, at 49, *quoting Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (internal quotation omitted). States may impose "some regulation of speech without infringing upon protected First Amendment rights." *Id.*

The United States Supreme Court has concluded that First Amendment protections apply to communication on the Internet. In *Reno v. ACLU*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), it stated:

> This dynamic, multifaceted category of communication includes not only traditional print and news services, but also audio, video, and still images, as well as interactive, real-time dialogue. Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer. As the District Court found, "the content on the Internet is as diverse as human thought."

*Melvin II*, at 47 n. 9 (quotation and citations omitted). However, Appellant has failed to develop an argument addressing the impact of Article 1, Section 7. Accordingly, the issue is waived. *See Bombar v. West American Ins. Co.*, 932 A.2d 78 (Pa.Super.2007); Pa. R.A.P. 2119.

---

**10.** Appellant asserts that the decision of the trial court violates Article 1, Section 7 of the Pennsylvania Constitution. Appellant's Brief, at 11. The Pennsylvania Supreme Court "has repeatedly determined that Article 1, § 7 affords greater protection to speech and conduct in this Commonwealth than does its federal counterpart, the First Amendment."

[*American Civil Liberties Union v. Reno*] 929 F.Supp. [824], at 842 [ (1996) ] (finding 74). We agree with its conclusion that our cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium.

*See Melvin II*, at 50, n. 11 ("[A]ny ruling that does not fully protect the anonymity of the anonymous Internet speaker may deter anonymous Internet speech.") (quotation and citation omitted); *see also Sony Music Entm't Inc. v. Does 1–40*, 326 F.Supp.2d 556, 562 (S.D.N.Y.2004); *Doe v. 2TheMart.com, Inc.*, 140 F.Supp.2d 1088, 1092 (W.D.Wash.2001); *Mobilisa Inc. v. Doe*, 217 Ariz. 103, 170 P.3d 712 (App. 2007); *Doe No. 1 v. Cahill*, 884 A.2d 451 (De.2005); *Dendrite Int'l, Inc. v. Doe, No. 3*, 342 N.J.Super. 134, 775 A.2d 756 (App. Div.2001).

With this broad understanding of the rights and issues at stake, we turn to the merits of Appellant's first question. No appellate court in Pennsylvania has addressed the appropriate standard by which the identity of a person who chooses to speak pseudonymously may be disclosed.[11] Therefore, we first examine two appellate decisions from other jurisdictions.

In *Dendrite Int'l, Inc. v. Doe, No. 3*, 342 N.J.Super. 134, 775 A.2d 756 (App.Div. 2001), a corporation brought a defamation claim against John Doe defendants for pseudonymous posts to a Yahoo! bulletin board. The corporation sought to compel the disclosure of the identity of the John Doe defendants. The trial court granted limited discovery sufficient to ascertain the identity of two of the defendants but denied the corporation's motion with respect to John Doe No. 3. According to the trial court, the corporation failed to state a *prima facie* case of defamation against John Doe No. 3, as it failed to demonstrate harm caused by John Doe No. 3's posted messages. *Dendrite*, 775 A.2d at 763–764. On appeal, the Superior Court of New Jersey recognized the "unique circumstances" created by Internet communication:

> With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of actually discovering the identity of the tortfeasor.

> In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with a forum in which they may seek redress for grievances. However, this need must be balanced against the legitimate and valuable right to participate in online forums anonymously or pseudonymously. People are permitted to interact pseudonymously and anonymously with

---

11. In *Melvin II*, for example, having concluded that one of the questions raised on appeal was entitled to collateral review, our Supreme Court remanded the matter to this Court, with instructions to consider "whether the First Amendment requires a public official defamation plaintiff to establish a *prima facie* case of actual economic harm prior to obtaining discovery of an pseudonymous defamation defendant's identity." *Melvin II*, at 50. However, the underlying cause of action was withdrawn prior to any decision by this Court.

each other so long as those acts are not in violation of the law. This ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate. Furthermore, it permits persons to obtain information relevant to a sensitive or intimate condition without fear of embarrassment. People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity.

*Dendrite*, at 767, *quoting Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D.Cal.1999) (footnote omitted).

The New Jersey court approved the trial court's decision and adopted its four-part test. A plaintiff must (1) provide sufficient notice to anonymous or pseudonymous posters that they are the subject of an application to disclose their identity; (2) identify the exact statements, which purportedly constitute actionable speech; and (3) provide the court with sufficient evidence to establish a *prima facie* case. Thereafter, (4) the court must balance the defendant's First Amendment right against the strength of the *prima facie* case presented. *Dendrite*, at 760–761.[12]

In *Doe No. 1 v. Cahill*, 884 A.2d 451 (De.2005), an elected town councilman brought a defamation action against a John Doe defendant based on pseudonymous statements posted on an Internet blog, which focused on local issues of public concern. The plaintiff obtained a court order directing Comcast Corporation to disclose the identity of the defendant. On appeal, the Supreme Court of Delaware reversed the decision of the trial court and adopted a modified version of the *Dendrite* test.

The court concluded that a plaintiff must support his claim with facts sufficient to defeat a motion for summary judgment.[13]

[T]he summary judgment standard is the appropriate test by which to strike the balance between a defamation plaintiff's right to protect his reputation and a defendant's right to exercise free speech anonymously.

*Id.*, at 460. The court also retained the notification requirement of the *Dendrite* test. However, the court concluded that the second and fourth requirements of the *Dendrite* test were unnecessary.

While the first prong of the *Dendrite* test adds a layer of protection to a defendant's First Amendment right to speak anonymously in addition to the showing required under the summary judgment standard, we do not think that the second and fourth prongs of the *Dendrite* test are necessary. The second requirement, that the plaintiff set forth the exact defamatory statements, is subsumed in the summary judgment inquiry. To satisfy the summary judgment standard a plaintiff will necessarily quote the defamatory statements in his

**12.** Appellant favors a modified *Dendrite* test: "While *Dendrite* does not apply to a criticism of a public official who claims libel, the test adopted in *Dendrite* applies to Appellee's claims ... Because the Appellee is a public official attempting to sue her constituents, a particularly detailed showing of the elements of the prima fascia [*sic*] case should be required." Brief of Appellant, at 19–20.

**13.** In Delaware, "[summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c) (Delaware, effective July 1, 2005).

complaint. The fourth *Dendrite* requirement, that the trial court balance the defendant's First Amendment rights against the strength of the plaintiff's *prima facie* case is also unnecessary. The summary judgment test is itself the balance. The fourth requirement adds no protection above and beyond that of the summary judgment test and needlessly complicates the analysis. Accordingly, we adopt a modified *Dendrite* standard consisting only of *Dendrite* requirements one and three: the plaintiff must make reasonable efforts to notify the defendant and must satisfy the summary judgment standard.

*Id.*

The *Cahill* court recognized that it was unreasonable to expect a plaintiff at this stage to prove actual malice where the plaintiff is a public official.

> [W]e are mindful that public figures in a defamation case must prove that the defendant made the statements with actual malice. Without discovery of the defendant's identity, satisfying this element may be difficult, if not impossible.

*Id.,* at 464. Thus, it held that a public official plaintiff must establish, by *prima facie* evidence, "all elements . . . *within the plaintiff's control." Id.,* at 463 (emphasis in original).

More recent opinions have adopted approaches consistent with the *Dendrite/Cahill* tests. *See, e.g., Mortgage Specialists, Inc. v. Implode–Explode Heavy Industries, Inc.,* 160 N.H. 227, 999 A.2d 184, 192 (2010); *Independent Newspapers, Inc. v. Brodie,* 407 Md. 415, 966 A.2d 432, 442 (2009); *Solers, Inc. v. Doe,* 977 A.2d 941 (D.C.2009); *Krinsky v. Doe 6,* 159 Cal. App.4th 1154, 72 Cal.Rptr.3d 231, 243–244 (2008); *Mobilisa, Inc. v. Doe,* 217 Ariz. 103, 170 P.3d 712, 717 (App.2007); *Reunion Industries, Inc. v. Doe 1,* 80 Pa. D. & C.4th 449 (Allegheny Cty.2007); *Polito v. AOL Time Warner, Inc.,* 78 Pa. D. & C.4th 328 (Lackawanna Cty.2004).[14]

In granting Appellee's amended petition in part, the trial court adopted most of the requirements set forth in *Polito v. AOL Time Warner, Inc.,* 78 Pa. D. & C.4th 328 (Lackawanna Cty.2004). In *Polito,* the plaintiff sought to compel an Internet Service Provider to reveal the identity of anonymous subscribers who had forwarded offensive material to her. The court imposed the following threshold requirements:

> Polito is entitled to obtain the identity of the AOL subscribers in question provided that she: (1) satisfactorily states a cognizable claim under Pennsylvania law entitling her to some form of civil or

---

**14.** Predating *Dendrite, Cahill* and their progeny is the trial court opinion in *Melvin v. Doe,* 49 Pa. D. & C.4th 449 (Allegheny Cty.2000) ("*Melvin I* "). In *Melvin I,* a Pennsylvania Superior Court judge brought a defamation claim against an unknown person or persons who had published statements on a website accusing the judge of engaging in inappropriate political activity. The trial court reasoned,

> If a plaintiff who has been harmed by allegedly defamatory anonymous speech cannot use the tools provided under state law to learn the identity of the speaker, anonymous Internet speech, no matter how false and injurious, would be outside the scope of

civil and criminal law for all practical purposes.

*Melvin I,* at 458. Accordingly, it required the plaintiff to establish a prima facie case and granted disclosure because the information (1) was material, relevant and necessary, (2) could not be obtained by alternative means and (3) was crucial to plaintiff's case. *Id.,* at 477. In an effort to minimize any potential harm to an innocent defendant, it also entered a protective order, which prohibited publication of the identity of the anonymous defendant to any third party. *Id.,* at 480; *see also Reunion Industries, Inc., v. Doe 1,* 80 Pa. D. & C.4th 449 (Allegheny Cty.2007).

criminal redress for the actionable speech of the unknown declarant(s); (2) demonstrates that the identifying information is directly related to her claim and fundamentally necessary to secure relief; (3) is seeking the requested information in good faith and not for some improper purpose such as harassing, intimidating or silencing her critics; and (4) is unable to discover the identity of the anonymous speaker(s) by alternative means. Furthermore, before the Internet Service Provider discloses the anonymous subscribers' identities, it must notify them in advance to afford them a reasonable opportunity to petition the court to vacate, reconsider or stay the discovery order prior to their identities being revealed.

*Polito,* 78 Pa. D. & C.4th 328, at *7.

■ We conclude that a modified version of the *Dendrite/Cahill* test is appropriate. There are four requirements which must addressed. These requirements are necessary to ensure the proper balance between a speaker's right to remain anonymous and a defamation plaintiff's right to seek redress.

### 1. Notification

■ The reviewing court must ensure that the John Doe defendant receives proper notification of a petition to disclose his identity and a reasonable opportunity to contest the petition. As our Supreme Court has stated, "the constitutional right to anonymous speech is ... deeply rooted in public policy," and once an identity is disclosed, that right "is irreparably lost." *Melvin II,* at 50.[15]

The procedure which a court uses to meet this requirement will vary as circumstances dictate. As noted by counsel for the represented Doe defendants, Internet users change their email addresses or stop using them without actually cancelling them. This presents a challenge because the limited identifying information which may be available may not be sufficient to effect proper notification. We agree with the represented Doe defendants that a reviewing court should inquire of the proprietor of the website to determine the most effective means of notification. Depending on the circumstances, service by publication may be appropriate. Pa.R.C.P. 430; *see also Fusco v. Hill Financial Savings Association,* 453 Pa.Super. 216, 683 A.2d 677 (1996).

Here, Appellant maintains identifying information on those who post messages on his message board. The trial court ordered Appellant to forward to each John Doe defendant a copy of its order, Appellee's petition and all materials relevant to the additional defendant. The trial court granted the John Doe defendants thirty days upon receipt of the notification to file an objection to disclosure of their identity. In light of the circumstances present in this case, the procedure adopted by the trial court was reasonable.

### 2. Sufficiency of the Evidence

Every plaintiff who petitions the court to disclose the identity of an anonymous or pseudonymous communicator must present sufficient evidence to establish a *prima facie* case for all elements of a defamation claim, *within the plaintiff's control,* such

---

**15.** We note that Section 551(c) of the Cable Communications Policy Act requires that Internet Service Providers provide notification prior to any disclosure. 47 U.S.C.A. § 551(c)(2)(B). Section 551(c) does not impact Appellant, as he is not an Internet Service Provider. Nevertheless, the federal statute is frequently relevant, because this subsection also requires that a court order pre-authorizes disclosure. *See, e.g., Dendrite; Krinsky; Polito.*

as would survive a motion for summary judgment. *See Cahill,* at 464 (noting that a public figure plaintiff need not provide evidence of actual malice in a petition to disclose because "[w]ithout discovery of the defendant's identity, satisfying this element may be ... impossible"); *see also Curran v. Philadelphia Newspapers, Inc.,* 497 Pa. 163, 439 A.2d 652, 662 (1981) ("The proof of 'actual malice' calls a defendant's state of mind into question, and does not readily lend itself to summary disposition.") (citation omitted), *quoting Hutchinson v. Proxmire,* 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979).[16] In so doing, a plaintiff may rely on exhibits, depositions or affidavits—all evidence which would be admissible and relevant in response to a motion for summary judgment.

There has been confusion surrounding the terminology used to describe the *prima facie* requirement of the *Dendrite/Cahill* test. *See, e.g., Solers, Inc. v. Doe,* 977 A.2d 941, 954 (D.C.2009) (acknowledging that "labels such as *prima facie* or 'summary judgment' may prove misleading," but adopting a test which "closely resembles" the *Cahill* summary judgment test); *Independent Newspapers, Inc. v. Brodie,* 407 Md. 415, 966 A.2d 432, 456–457 (2009) (rejecting the *Cahill* summary judgment test as too burdensome "by requiring claimants to essentially prove their case before even knowing who the commentator was"); *Krinsky v. Doe 6,* 159 Cal.App.4th 1154, 72 Cal.Rptr.3d 231, 243–244 (2008) (distinguishing the *Dendrite prima facie* test from the *Cahill* summary judgment test). However, the *Cahill* court considered its evidentiary standard to be identi-cal to the one imposed by the *Dendrite* court. *Id.,* at 461 ("Accordingly, we adopt a modified *Dendrite* standard consisting only of *Dendrite* requirements one [notification] and three [*prima facie* evidence].").

As stated in *Solers, Inc.,* "[t]he important feature of *Dendrite* and *Cahill* is to emphasize that the plaintiff must do more than simply plead his case." *Solers, Inc.,* 977 A.2d at 954. Regardless of which label is attached to the requirement, the objective is to properly balance a defendant's First Amendment right to speak anonymously against an injured plaintiff's right to seek redress. The summary judgment standard properly achieves this balance. It ensures that a plaintiff does not present a frivolous claim or one intended merely to harass or silence a vocal critic. On the other hand, requiring this modest amount of evidence and interpreting such evidence in the light most favorable to the plaintiff ensures that the right to redress is not unduly burdened.

This is particularly so in Pennsylvania, where the summary judgment test requires a plaintiff to establish a *prima facie* case. Our standard for summary judgment is twofold:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

---

**16.** According to Appellee, the summary judgment standard is not appropriate because the United States and Pennsylvania Supreme Courts have concluded that public figure defamation cases are not generally suitable to summary disposition. *See Hutchinson,* 443 U.S. at 120 n. 9, 99 S.Ct. 2675; *Weaver v. Lancaster Newspapers, Inc.,* 592 Pa. 458, 926 A.2d 899 (2007), *citing Hutchinson.* This exception, exempting a public figure from proving actual malice at this stage, addresses the concern raised by Appellee.

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. The Note which follows the rule clarifies that a party is entitled to summary judgment "[u]nder subparagraph (2), [where] the record contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to a jury." Thus, in Pennsylvania, the *prima facie* test and the summary judgment test are identical.

Relying on *Polito*, the trial court in the instant case required Appellee to provide sufficient evidence to establish a *prima facie* case of defamation. *See* Trial Court Memorandum and Order, October 1, 2008, at 2. However, later in its memorandum, the trial court opined that "[a] *prima facie* case for defamation requires the plaintiff *to plead* the following ..." *Id.*, at 5 (emphasis added). Further complicating our review is the lack of any analysis of Appellee's evidence, thus reinforcing our concern that the trial court did not require evidence, but merely evaluated the pleadings. A plaintiff may not satisfy the summary judgment requirement by relying on the averments contained in a complaint. Mere pleadings are not sufficient. A plaintiff must present actual evidence.

 The reference point for the evaluation of the sufficiency of evidence of a defamation action is 42 Pa.C.S.A. § 8343, which sets forth the elements of the cause of action. *See also, Maier v. Maretti*, 448 Pa.Super. 276, 671 A.2d 701 (1995). A plaintiff asserting a claim based on libel need not establish "special damages." *Walker v. Grand Cent. Sanitation, Inc.*, 430 Pa.Super. 236, 634 A.2d 237, 243 (1993), *citing Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456 (1984). The term "special damages" is defined as "actual economic harm" or "pecuniary loss." *Brinich v. Jencka*, 757 A.2d 388, 397 (Pa.Super.2000) (equating special damages with "pecuniary loss"), *appeal denied*, 565 Pa. 634, 771 A.2d 1276 (2001). However, every defamation plaintiff must prove "actual harm." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Pecuniary loss is not the only, or even the most significant harm resulting from defamation. Injury to reputation, impairment of standing in the community, personal humiliation and mental anguish are types of actual harm "not limited to out-of-pocket loss" compensable for defamation. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).[17]

 In the instant case, the trial court did not focus on Appellee's duty to produce *prima facie* evidence of actual harm. More is required than a bald assertion that the defamatory statements harmed a plaintiff's reputation "in the social, civil, professional and political community."

### 3. Affidavit of Good Faith and Necessity

A petitioner must submit an affidavit asserting that the requested information is sought in good faith, is unavailable by other means, is directly related to the claim

---

**17.** A jury award for such "actual harm" must be "limited by appropriate instructions" and "supported by competent evidence ... although there need be no evidence which as-
signs an actual dollar value to the injury." *Gertz v. Robert Welch, Inc.*, 418 U.S. at 350, 94 S.Ct. 2997; *see also Agriss*, 483 A.2d at 473–74.

and is fundamentally necessary to secure relief. This requirement has been imposed by other courts. *See, e.g., Sony Music Entm't Inc. v. Does 1–40*, 326 F.Supp.2d 556, 562 (S.D.N.Y.2004); *In re Subpoena Duces Tecum to AOL, Inc.*, 52 Va. Cir. 26, 2000 WL 1210372, at *5 (Va. Cir.Ct.2000), *rev'd on other grounds*, *America Online, Inc. v. Anonymous Publicly Traded Co.*, 261 Va. 350, 542 S.E.2d 377 (2001); *Polito; see also Doe v. 2TheMart.com Inc.*, 140 F.Supp.2d 1088 (W.D.Wash.2001) (concluding that a corporate defendant was not entitled to disclosure of the identity of anonymous posters to an Internet message board because the information was not directly and materially relevant to its defense in the underlying litigation).

> This requirement is well-founded:
>
> The possibility of losing anonymity in a future lawsuit could intimidate anonymous posters into self-censoring their comments or simply not commenting at all. A defamation plaintiff, particularly a public figure, obtains a very important form of relief by unmasking the identity of his anonymous critics. The revelation of [the] identity of an anonymous speaker may subject [that speaker] to ostracism for expressing unpopular ideas, invite retaliation from those who oppose her ideas or from those whom she criticizes, or simply give unwanted exposure to her mental processes.

*Cahill*, 884 A.2d at 457. Thus, disclosing the identity of an anonymous critic may provide the only relief a public figure seeks. *Id.* Requiring an affidavit will impress upon a defamation plaintiff the importance of the interests at stake.

In the instant case, the trial court required Appellee to submit an affidavit asserting that the requested information is sought in good faith and unavailable by other means. However, it did not require an affidavit asserting that the information is directly related to her claim and fundamentally necessary to secure relief.

## 4. Balancing Test

Finally, the reviewing court must conduct the *Dendrite* balancing test. The court must expressly balance the defendant's First Amendment rights against the strength of the plaintiff's *prima facie* case. *See Dendrite*, at 760–761.

■ In balancing the equities, the reviewing court should examine the defamatory nature of the comments, the quantity and quality of evidence presented, and whether the comments were privileged. *See, e.g., Dendrite*, at 772 (concluding that the plaintiff's evidence did not establish a sufficient nexus between the actionable statements and plaintiff's allegation of harm to justify disclosure). The court should also consider the forum in which the actionable comments arose. For example, comments on matters of public importance or those which criticize public officials are entitled to robust protection, for it is in the public forum that the First Amendment right of speech is strongest. *See New York Times v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (recognizing our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.").

■ The balancing test is not superfluous. The purpose of defamation law is to nurture the proper balance between an individual's right to speak freely and an injured plaintiff's right to redress, but this balance is not achieved until a fact-finder renders a final judgment. By imposing upon the trial court the task of balancing

these interests, First Amendment considerations are brought into proper focus. The trial court did not conduct a balancing test in this case.[18]

We vacate the order of the trial court and remand for further proceedings consistent with this opinion. Appellee shall be permitted to file an amended petition.

Order vacated. Case remanded for further proceedings consistent with the standards set forth in this opinion. Appellee's motion to dismiss and/or quash is denied as moot. Jurisdiction relinquished.

Judge COLVILLE files a Concurring/Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY COLVILLE, J.:

I agree with the Majority's decision to quash Appellee's appeal. I, however, also would quash Appellant's appeal in its entirety.

The Majority finds that the first question Appellant presents in his appellate brief is reviewable pursuant to the collateral order doctrine. "An appeal may be taken as of right from a collateral order of an administrative agency or lower court." *See* Pa.R.A.P. 313(a). The collateral order doctrine "conveys the right to appeal ..., provided that the party appealing has sat-

isfied the three-pronged prerequisite: (1) the order must be separable from and collateral to the main cause of action; (2) the right involved must be too important to be denied review; and (3) if review is postponed, the claim will be irreparably lost." *Commonwealth v. Dennis*, 580 Pa. 95, 859 A.2d 1270, 1277 (2004); Pa.R.A.P. 313(b). Importantly, the collateral order doctrine is to be construed narrowly; every one of its three prongs must clearly be present before collateral appellate review is allowed. *Rae v. Pennsylvania Funeral Directors Association*, 602 Pa. 65, 977 A.2d 1121, 1126 (2009).

Appellant's *pro se* brief suffers from a lack of organization. In my view, a fair reading of the arguments Appellant utilizes to support his first issue contain an essential claim that the trial court erred by requiring him to reveal the identities of six anonymous internet posters because the statements attributed to those posters are not defamatory and, thus, are protected by the First Amendment. My view of Appellant's issue and arguments does not differ significantly from the Majority's view of the same. *See* Majority Opinion at 437 ("In the argument supporting his first question presented, Appellant contends that the trial court ordered disclosure of the identity of six John Doe defendants, in

18. The reviewing court may impose additional requirements on a case by case basis as necessary. This will ensure flexibility in the process. Any further requirements should simplify the reviewing court's task of ensuring that the substantive requirements outlined above are met. They should focus the parties on those facts and issues fundamental to a reviewing court's particular determination.

For example, the trial court in the instant case required Appellee to identify every pseudonymous defendant by call sign, the actionable statements attributed to that person and the specific claims pursued. This information should already be contained in a well-pleaded complaint. However, these require-

ments are reasonable in a complaint charging numerous and varying claims against dozens of pseudonymous defendants making hundreds of allegedly defamatory statements. Without sufficient specificity included in the petition, the reviewing court's task would be insurmountable. The actionable language at issue will be readily available to a plaintiff, and its formal inclusion in a motion seeking disclosure will assist the reviewing court in focusing on the precise language in dispute. In contrast, a relatively simple case, involving a single defendant and few actionable statements, does not pose the same difficulties, and therefore, the reviewing court may see fit to simplify the process.

violation of their First Amendment rights, absent sufficient evidence to establish a *prima facie* case.").

As to the first prong of the collateral order doctrine, our Supreme Court has "held that if the resolution of an issue concerning a challenged trial court order can be achieved independent from an analysis of the merits of the underlying dispute, then the order is separable for purposes of determining whether the order is a collateral order pursuant to Rule 313." *Commonwealth v. Kennedy,* 583 Pa. 208, 876 A.2d 939, 943 (2005). A primary issue in Appellee's case is whether the anonymous posters defamed Appellee. Resolution of Appellant's first appellate issue, as he frames and supports it, requires that we examine the complained-of statements and determine whether they constitute constitutionally protected speech or statements capable of defamatory meaning. As such, a review of Appellant's issue cannot be achieved without an analysis of the merits of the underlying dispute.

According to the Majority, Appellant's argument "implicates the threshold requirements imposed by the trial court as a prerequisite to disclosure of the identity of six John Doe defendants." Majority Opinion at 437. In concluding that the issue implicated by Appellant's argument qualifies as an issue entitled to collateral review, the Majority states, "It is precisely the type of question previously accepted by our Supreme Court in [*Melvin v. Doe,* 575 Pa. 264, 836 A.2d 42 (2003) ]." *Id.* Had Appellant presented such an issue to this Court, I would agree with the Majority's conclusion.

According to the rules of appellate procedure, "No question will be considered unless it is stated in the statement of questions involved [section of an appellant's brief] or is fairly suggested thereby."

Pa.R.A.P. 2116(a). Appellant frames his first issue in the following manner:

1. Did trial court [sic] err at law or abuse its discretion where it ordered the Appellant to disclose the identities of six (6) anonymous posters on the Appellant's political message board where the statements made by the posters were constitutionally protected by the First Amendment.

Appellant's Brief at 4. On its face, this issue asks whether the trial court erred by ordering Appellant to disclose the identities of the anonymous posters where their statements were constitutionally protected. The issue does not expressly raise a question regarding the threshold requirements imposed by the trial court as a prerequisite to disclosure of the posters' identities, nor does the issue fairly suggest such a question. We are required to construe the collateral order doctrine narrowly, and in doing so, we may only review an issue pursuant to this doctrine if every one of its three prongs is clearly present.

With these principles in mind, I am unable to credit Appellant with raising the question which the Majority attributes to him by implication. In my view, Appellant's first issue fails to clearly present an issue separable from and collateral to the main cause of action. I, therefore, would quash Appellant's appeal.