J-A26009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| UNITED SENIOR ADVISORS GROUP, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LEISAWITZ HELLER ABRAMOWITCH PHILLIPS, P.C.I., WILLIAM R. BLUMER, ESQUIRE | |
| | No. 365 MDA 2017 |

Appeal from the Order Entered January 27, 2017
In the Court of Common Pleas of Berks County
Civil Division at No(s): 08-7390

BEFORE:  BOWES, OLSON, AND RANSOM, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 14, 2018**

United Senior Advisors Group, Inc. appeals from the January 27, 2017 order entering summary judgment against it.  We affirm.

On January 28, 2008, Appellant instituted this action against Appellees, Leisawitz Heller Abramowitch Phillips, P.C.I. ("LHAP") and William R. Blumer, Esquire, in the Chester County Court of Common Pleas, averring that the named defendants had defamed it and intentionally interfered with its existing and prospective business relationships.  The matter was transferred to the Berks County Court of Common Pleas on June 10, 2008, where preliminary objections were filed and Appellant eventually filed a second amended complaint.

The second amended complaint sets forth that the basis for this lawsuit was a November 9, 2007 letter authored by Mr. Blumer, in his capacity as the chairman of the board of Berks County Senior Citizen's Council and as a local attorney practicing in the area of elder law, and sent on LHAP letterhead. The document stated that there was a "Living Trust Scam" involving companies that solicit senior clubs to present programs on living trusts and estate planning, and it identified Appellant as one of those companies. Second Amended Complaint, 6/10/08, at Exhibit A. The correspondence characterized the presentations as a "sinister form of financial exploitation of the elderly" that "often result in seniors losing thousands of dollars in unnecessary fees for documents they do not need," and that "can also result in the sale of investments that are not appropriate for seniors." *Id*.

The letter delineated the following. The companies try to gain the confidence of senior citizens by overstating the expenses associated with the estate-planning process and exaggerating the benefits of a living trust in solving estate planning issues faced by elderly citizens, but the presentations are "disguised attempts to sell annuities and other investment products." *Id*. After a client creates the living trust, the companies immediately try to re-title assets into the trust's name and to sell annuities that result in sales commissions that greatly exceed the fees charged to prepare the living trusts. The annuities often contain early withdrawal penalties "that result in

seniors having their assets tied up for as many as ten or twenty years without being able to access the money without payment of significant penalties." *Id*. Appellant averred that the letter was sent to Clara Koch, who furnished the letter to Gene and Barbara Messner. These three recipients "then furnished the November 9, 2007 Correspondence and/or a verbal account of its contents to numerous others in Berks County, Chester County, and elsewhere." *Id*. at ¶ 10.

After Appellees filed an answer to the second amended complaint and Appellant issued a final response to Appellees' new matter, the pleading stage of this lawsuit closed on December 22, 2008. On June 8, 2009, Appellees sent interrogatories and a request for production of documents to Appellant. There were no docket activities from June 8, 2009, until September 10, 2010, when Neil E. Jokelson, Esquire, entered his appearance for Appellant due to the death of its original lawyer, Oliver Fey, Esquire. On December 11, 2012, the Berks County prothonotary sent notice that it intended to terminate this action due to a lack of docket activity, and, on January 14, 2013, Appellant responded by filing a notice of its intent to proceed.

Other than two orders re-assigning this case to a different judge and one notice of a change of address by a defense counsel, there were no documents filed in this lawsuit from January 14, 2013, until February 18, 2015, when Mr. Jokelson withdrew. Present counsel, Douglas B.

- 3 -

Breidenbach Jr., Esquire, entered his appearance for Appellant on May 4, 2015.

On October 17, 2016, Appellees filed a document titled, "Defendants' Joint Motion for Summary Judgment," the body of which also indicates that the movants were seeking summary judgment. While the motion included the procedural background of this matter, which necessarily recited the absence of any activity on Appellant's part to advance this case, Appellees clearly set forth, "LHAP Defendant and Defendant Blumer now move for summary judgment and respectfully submits [sic] that Plaintiff has failed to identify any actual quantifiable damages such that Plaintiff's claims fail as a matter of law." Defendants' Joint Motion for Summary Judgment, 10/17/16, at ¶ 22. The body of the document in question is replete with references to Pa.R.C.P. 1035.2 and 1035.3, which are rules applicable to the grant of summary judgment, and it continually demands entry of summary judgment in favor of Appellees. After Appellant failed to respond to the motion, the trial court entered summary judgment against Appellant on December 7, 2016.

Appellant moved for reconsideration of the grant of summary judgment, claiming that it actually was a motion for judgment of *non pros* and failed to establish that Appellees were entitled to such an award. Appellant additionally claimed that it did not have to file a response to the summary judgment motion because the order attached to it indicated that:

1) Appellees were seeking a rule to be issued upon Appellant to show cause why Appellees were not entitled to relief, which would allow Appellant to respond to the motion after the rule was issued; and 2) the motion was to proceed pursuant to Pa.R.C.P. 206.7,[1] which pertains to the procedure to be followed after a rule to show cause is issued.

The trial court agreed that the order's reference to a rule to show cause why the motion should not be granted could cause confusion as to the necessity of an immediate answer, and, concomitantly, on January 5, 2017,

_____

[1] That rule sets forth:

> (a) If an answer is not filed, all averments of fact in the petition may be deemed admitted for the purposes of this subdivision and the court shall enter an appropriate order.
>
> (b) If an answer is filed raising no disputed issues of material fact, the court on request of the petitioner shall decide the petition on the petition and answer.
>
> (c) If an answer is filed raising disputed issues of material fact, the petitioner may take depositions on those issues, or such other discovery as the court allows, within the time set forth in the order of the court. If the petitioner does not do so, the petition shall be decided on petition and answer and all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of this subdivision.
>
> (d) The respondent may take depositions, or such other discovery as the court allows.

Pa.R.C.P. 206.7

it granted Appellant's motion for reconsideration and vacated its December 7, 2016 grant of summary judgment without prejudice.

Appellees then filed a joint pre-trial conference memorandum, in which they repeated their claim that Appellant, at trial, would not be able to produce any evidence of damages. At the pretrial conference held on January 20, 2017, Appellees renewed their request for grant of summary judgment, maintaining that Appellant "in the over eight years since the inception of the case, including over one and [one-]half years since current Plaintiff's Counsel took the case, failed to produce any evidence or undertake any discovery to show that Defendant's letter caused any harm to Plaintiff." Trial Court Opinion, 4/24/17, at 4-5. In response to that request, "Plaintiff's counsel was unable to offer any evidence whatsoever to support Plaintiff's claim of damages caused by the 2007 letter," conceding that Appellant "had not interviewed or deposed any of the recipients" of the letter to establish "the alleged harm to Plaintiff." *Id*. at 9. Appellant additionally "was unable to show that additional discovery time would be fruitful in producing such evidence." *Id*. at 10. After hearing the argument of counsel, the trial court granted summary judgment to Appellees, and this appeal, wherein the following issues are raised, ensued:

> 1. Whether the Court erred in granting summary judgment to Defendants where no Motion for Summary Judgment, properly designated as such, was filed.

2. Whether the Court erred in granting summary judgment to Defendants where, assuming arguendo that a Motion for Summary Judgment was properly filed and unopposed, the Defendants were nevertheless not entitled to summary judgment, as a matter of law.

Appellant's brief at 1.

Initially, we delineate the standards applicable in the summary judgment context. "We review a challenge to the entry of summary judgment . . . only where it is established that the court committed an error of law or abused its discretion." **Finder v. Crawford**, 167 A.3d 40, 44 (Pa.Super. 2017). Furthermore,

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. **See** Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. **Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment**. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

**Id**. (citation omitted; emphasis added).

Appellant first insists that the grant of summary judgment was infirm because no motion for summary judgment "properly designated as such" was filed. We disagree for these reasons: 1) the motion in question was

- 7 -

clearly labeled a joint motion for summary judgment; 2) the relief therein expressly was sought pursuant to Pa.R.C.P. 1035.2 and 1035.3, which govern a motion for summary judgment; and 3) the term "summary judgment" is scattered throughout the document in question. In maintaining that there was no summary judgment motion filed, Appellant focuses singularly on the fact that the order appended to the summary judgment motion requested a rule to show cause. However, any confusion caused by the order would relate solely to whether an immediate response to the motion was required. Additionally, any prejudice to Appellant from the order's contents was cured when the trial court vacated entry of summary judgment, without prejudice, on the very ground it now advances. The present grant of summary judgment was issued after Appellees renewed their requested relief for summary judgment, and Appellant admitted, during the pretrial conference, that it could not present a single witness to establish the existence of damages. Accordingly, this first issue is meritless.

Appellant's second position is that summary judgment was improperly granted since it did not have to prove the existence of any damages whatsoever because the November 9, 2007 letter was defamatory *per se*.[2] Appellant relies upon antiquated common law in advancing this assertion.

_____

[2] Appellant does not claim on appeal that it did not have to prove the existence of damages for purposes of its claim for intentional interference
*(Footnote Continued Next Page)*

As our Supreme Court outlined in ***Joseph v. Scranton Times L.P.***, 129 A.3d 404, 424 (Pa. 2015), a cause of action in defamation is now codified by statute, which provides that in a defamation lawsuit, plaintiff has the burden of proving:

> (1) The defamatory character of the communication.
>
> (2) Its publication by the defendant.
>
> (3) Its application to the plaintiff.
>
> (4) The understanding by the recipient of its defamatory meaning.
>
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
>
> (6) **Special harm resulting to the plaintiff from its publication**.
>
> (7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343(a) (emphasis added); ***see also Pilchesky v. Gatelli***, 12 A.3d 430, 444 (Pa.Super. 2011) (citing ***Gertz v. Robert Welch, Inc.,*** 418 U.S. 323 (1974) (while defamation *per se* is actionable without proof of economic loss, "every defamation plaintiff must prove 'actual harm,'" and "[m]ore is required than a bald assertion that the defamatory statements harmed plaintiff's reputation in the social, civil, professional and political community.")).

*(Footnote Continued)* ─────────────

with business relationships.  Its argument on appeal pertains solely to the defamation cause of action outlined in its complaint.

In ***Walker v. Grand Central Sanitation, Inc.***, 634 A.2d 237 (Pa.Super. 1993), we analyzed this precise issue, concluding that the general assembly had abrogated the common law rule absolving a plaintiff in a defamation *per se* action from proving actual harm, and we adopted Restatement (Second) of Torts § 621, which provides, "One who is liable for a defamatory communication is liable for the proved, actual harm caused to the reputation of the person defamed." The ***Walker*** Court articulated that the Restatement of Torts

> exhibits a concern for the relative inability of courts to control the amount of damages awarded by juries under the common law. It therefore requires a victim of slander *per se* to make some showing of general damage, although she need not prove "special damage," *i.e.,* monetary or out-of-pocket loss borne by the defamation. ***See*** Restatement (Second) of Torts, § 573. One who is liable for a defamatory communication is liable for the proved, actual harm caused to the reputation of the person defamed. ***Id.,*** § 621. A comment to this section indicates that proof of actual damage is a requirement for all slander actions; the only difference between actions which are *per se* and those which are actionable only upon proof of an "innuendo" is that in *per se* cases a plaintiff need not establish pecuniary or economic loss. ***Id.*** Under the Second Restatement, a plaintiff in a slander *per se* case must show "general damages": proof that one's reputation was actually affected by the slander, or that she suffered personal humiliation, or both.
>
> In Pennsylvania, our legislature seemingly abrogated the common law rule of truly "presumed damage" when it codified the prerequisites for recovering in a defamation action. 42 Pa.C.S.A. § 8343.

***Id***. at 241–42.

Accordingly, Appellant incorrectly maintains that it did not have to prove the existence of any harm because the letter in question accused it of engaging in misconduct or fraud in marketing living trusts to senior citizens. While it did not have to establish economic loss, it did have to adduce some proof that its business reputation was affected by the communication. Appellant admitted to the trial court that it could present no witness to attest that its reputation in the community was harmed due to the dissemination of the correspondence in question. Since Appellant had the burden of proving that aspect of its defamation cause of action, summary judgment was properly entered herein.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2018